**Paul GREEN, Plaintiff,**

v.

**Daniel I. DAVILA and First Federal Savings and Loan Association of Puerto Rico, Defendants.**

**Civ. No. 368–72.**

United States District Court,
D. Puerto Rico.
March 18, 1975.

Celestino Morales, Jr., San Juan, P. R., for plaintiff.

Ramírez, Segal & Latimer, Carlos G. Látimer, Santurce, P. R., for defendant.

## OPINION AND JUDGMENT

PESQUERA, District Judge.

In this action plaintiff originally sought the recovery of the sum of $12,500.00 from defendants Daniel I. Dávila and First Federal Savings and Loan Association of Puerto Rico (hereinafter referred to as First Federal), plus interest and attorney's fees. In open court, plaintiff's attorney expressed that Mr. Daniel I. Dávila was in bankruptcy and he had no further interest in proceeding against him. The case, therefore, continued against First Federal. In essence, plaintiff's contention is that Mr. Daniel I. Dávila, as agent for the bank, acting with real or apparent authority, borrowed money from plaintiff and on behalf of the bank, so that there exists a contractual obligation by First Federal to pay said money to plaintiff. A pretrial was held and various matters were stipulated, some of which will be referred to in this opinion. The case came on for trial on the 1st day of July and continued on the 2nd and 3rd day of the same month. By stipulation of the parties, plaintiff's deposition was introduced in evidence as his testimony. Plaintiff also introduced, as his own witnesses, Mr. Daniel I. Dávila and Mr. Alan Hirsch, present Senior Vicepresident of First Federal. Defendant First Federal presented the testimony of one of its Directors, Antonio Barceló, Esq. Documentary evidence was presented by both parties. After examining the pleadings and the stipulation of the parties, and weighing the evidence, the Court makes the following

### Findings of Fact

1. Plaintiff is a resident of New York, an attorney who has been practicing as such for twenty-nine years and, according to his own testimony, an expert in connection with mortgages pertaining to real estate transactions.

2. Early in 1960 he met Mr. Daniel I. Dávila through a certain Mr. Geiger whom plaintiff had, prior to that date, represented as an attorney.

3. Mr. Daniel I. Dávila made certain representation to him; in essence, to the effect that there was a good profit to be made in loaning monies to prospective borrowers of First Federal who were awaiting approval of mortgage loans from First Federal but who needed the money in a hurry. These representations were made approximately in the second half of the year 1968 and to that effect they had several conversations both in New York and in Mr. Daniel I. Dávila's home in Puerto Rico.

4. Plaintiff checked about Mr. Daniel I. Dávila with Mr. Geiger and found that Mr. Dávila was prosperous. He personally saw Dávila's surroundings and Mr. Geiger informed him that he had had other deals with Dávila which were satisfactory. From these circumstances, plaintiff surmised that Dávila had paid Geiger all sums involved in their previous deals.

5. Pursuant to their conversations, plaintiff delivered to Dávila the sum of $25,000.00, for which amount plaintiff received a note dated November 14, 1968, executed in New York to the order of Paul Green and Grumet Realty for the amount loaned, with interest at the rate of 24% per annum and with the specific statement that the note should be interpreted in accordance with the law of the State of New York.

6. The note was signed by Daniel I. Dávila as president of a corporation named Lada, Inc. and was personally indorsed in blank by Daniel I. Dávila.

7. First Federal, which does not have, nor has it ever had, any offices in New York, is not mentioned in said note.

8. At approximately the same time plaintiff received an assignment of the proceeds of a policy of life insurance on the life of Daniel I. Dávila for the amount of the note.

9. Plaintiff thought the charges for interest to prospective borrowers were made by Dávila and not by First Feder-

al. He specifically testified as follows: "my loan was made to a corporation and guaranteed by Mr. Dávila which is the form of the transaction which it (sic) took place in New York under those circumstances".

10. It was plaintiff's belief, according to his specific testimony, that the bank was not going to be directly involved in the interim financing, but rather it would be handled by Mr. Dávila on a personal basis although said loans to prospective borrowers of the bank would result in an accommodation to the bank.

11. The note under consideration was prepared by a certain Mr. Mendelson who, according to plaintiff, did not represent him in that transaction but who in the past had acted as co-counsel with him in various matters.

12. In May 1970, almost one year and a half after the maturity of the note, plaintiff called Daniel I. Dávila and requested payment of the note and specifically told him "look, if you can't pay all of it back now send me back part, send me back half".

13. After that call Mr. Dávila paid plaintiff the sum of $12,500.00.

14. Plaintiff reported the interest received in his income tax return as received from Mr. Daniel I. Dávila.

15. Interest to plaintiff was paid either by manager's checks or money orders issued by First Federal.

16. Money orders or manager's checks may be purchased by any client of the bank, by any employee or by any person related to the bank or whom the bank wishes to accommodate. These purchases are common banking transactions.

17. With the exception of one loan made from Banco Popular several decades ago, First Federal has never borrowed monies from any person or entity except the Federal Home Loan Bank.

In addition, having been stipulated by the parties, during the pretrial conference, the Court finds that:

18. Prior to June 1968 and until 1970, co-defendant Daniel I. Dávila acted as First Vicepresident of codefendant First Federal.

19. Horace Dávila is the brother of codefendant Daniel I. Dávila and prior to 1968 and to date is the president of codefendant First Federal.

20. Enrique Campos del Toro is a relative of codefendant Daniel I. Dávila and several years ago was president of First Federal, and at least since 1968 to date Chairman of the Board of Directors of First Federal.

21. The only natural persons involved in the transaction that, according to plaintiff gives rise to the present cause of action, were plaintiff, codefendant Daniel I. Dávila and Mr. Dávila's secretary.

22. That it was agreed that the loan transaction would be governed by the laws of the State of New York.

23. There is no writing with respect to the pertinent transactions between Lada, Inc. or Daniel I. Dávila and First Federal.

It was testified by Antonio Barceló, Esq., and the Court so finds that:

24. The Directors of First Federal are the following persons: Enrique Campos del Toro, Horace E. Dávila, Antonio R. Barceló Bird, Herbert Rooney, Luis E. Biascoechea, Rafael O. Fernández and Juan B. Aponte.

Based on the foregoing findings of fact, the Court now formulate the following

## Conclusions of Law

The Court concludes that Daniel I. Dávila never had been granted actual authority to borrow money on behalf of the bank from any person or institution whatsoever.

Apparent authority is a concept which arises when certain basic premises are established. These premises, in very general terms, are as fol-

lows: (1) that the principal has manifested his consent to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority. In this sense, this premise depends on the acts of the principal and not upon acts of the agent; (2) that the third person knew of the facts and, acting in good faith, had reason to believe, and did in fact and actually believe, that the agent had the authority to act on behalf of the principal in binding him to contractual obligations. This second premise naturally depends on acts and the state of mind of the person claiming the existence of the concept of apparent authority; (3) that the third person, relying on such appearance of authority, has changed his position and is injured or suffered a loss. Again, this concept depends on the state of mind and the acts of the person claiming the agency. If anyone of these three premises is not established the concept of apparent authority does not arise. 3 Am.Jur.2d, Agency, § 75. Further, a person dealing with an agent may not act negligently or blindly trust the agent's statements but must use prudent and reasonable diligence to ascertain whether the agent is acting within the scope of his powers. 3 Am.Jur.2d, Agency, § 78. In Builders Center, Inc. v. Smith, 228 So.2d 245, although the facts are different from those of the case at bar, it was said:

"However, it is also well settled that whoever deals with an agent is put on his guard and it is his duty to inquire into and ascertain the nature and extent of power of the agent. He is required to determine whether or not the contract about to be consummated comes within the agency and will or will not bind the principal."

In an annotation in 55 ALR 2d, 1215, Section 17, page 1257, a general principle is expressed as follows:

"Even if the principal holds out his agent as having authority to borrow money for him, he is not liable on the theory of apparent authority to one lending money to the agent, where the lender, either because he is ignorant of the facts giving rise to the apparent authority, or for other reasons, does not rely on the existence of such authority."

We hold that under the facts of the present case, as determined and expressed in this opinion, the concept of apparent authority does not apply. On the contrary, all the evidence tends to show that at all times plaintiff was fully aware that he was dealing with Daniel I. Dávila acting on his own behalf. The evidence, as analyzed by the Court, makes inherently incredible the proposition that plaintiff, in good faith and with knowledge of the facts, was under the reasonable belief that he was at all times dealing with First Federal and not with Daniel I. Dávila or Lada, Inc.

On the basis of the evidence before this Court, we are forced to reject, and do hereby reject, the proposition that a contractual relationship based on actual authority or apparent authority existed between plaintiff and First Federal.

### Judgment

In view of the foregoing, the Court does hereby enter judgment for the defendant First Federal Savings and Loan Association of Puerto Rico and orders that the plaintiff's complaint be dismissed and that he pay defendant's costs in this matter.