William DARK, d/b/a Delmar Race & Sports Club, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 79–3290.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 11, 1981.

Decided April 9, 1981.

Jerome L. Blut, Las Vegas, Nev., for plaintiff-appellant.

James F. Miller, Atty. Tax Div., Dept. of Justice, Washington, D. C., argued for defendant-appellee; Gilbert E. Andrew, M. Carr Ferguson, Carleton D. Powell, R. Russell Mather, Washington, D. C., on brief.

Before FERGUSON and REINHARDT, Circuit Judges, and BONSAL,* District Judge.

FERGUSON, Circuit Judge:

William Dark appeals a district court judgment finding him liable for taxes from an illegal gambling operation on his legal gambling premises. He claims that because he is not criminally culpable, he cannot be subject to tax liability. He further alleges

* Hon. Dudley B. Bonsal, Senior United States District Judge, Southern District of New York, sitting by designation.

1. This section was amended in 1974 to impose a 2% tax.

that the court's method of determining the amount of liability is erroneous.

We affirm the district court.

## I.

Plaintiff Dark owns and operates the Delmar Race & Sports Club, a bookmaking business licensed by the State of Nevada. Section 4401 of the Internal Revenue Code, 26 U.S.C. § 4401, required a 10% tax on all wagering operations.[1] Under Nevada law, the tax is to be collected by the bookmaker from the bettor.

In 1967, undercover Internal Revenue Service ("IRS") agents placed bets with Dark's employees at the Delmar Club and were not required to pay the excise tax. The employees did not treat these bets in the usual fashion—by stamping them and producing a duplicate for the bettor. The bets received a special code and did not appear in Dark's bet slips and summary sheets purportedly reflecting all bets and payouts for the period.

Revenue agents subsequently searched the premises pursuant to a warrant and seized the day's bet slips, including a number of the specially coded slips. On this evidence, the Tax Commissioner assessed Dark a $447,572.03 tax deficiency as well as a fraud deficiency of $223,785.99.

Dark paid a portion of this tax and then initiated this action seeking refund and abatement of the assessment. The district court found that Dark was unaware of the illegal activity of his employees. It excused him from the fraud assessment but found him liable for a tax deficiency of $68,388.87. That amount represented the tax on unreported bets for the period in which the court determined that the illegal operation had taken place.[2] This figure was projected on the basis of data the IRS collected over a three-day span.

2. This period was shorter than the one assessed by the commissioner; the district court found no evidence of operations prior to August 1966.

Dark claims on appeal that he should not be assessed a tax for illegal activity in which he took no part. He asserts also that the use of projections over the relevant period was invalid. Dark argues that such projections are not proper where the taxpayer has been adjudicated innocent of wrongdoing and where his lack of involvement prevented his creation of reasonable records.

## II.

■ A. Dark claims that no tax could be imposed because the court determined he was not involved in the illegal activity. He relies, however, on cases which do not support this contention. In each case, a taxpayer was absolved of liability for the illegal gambling operation because of evidence insufficient or inadmissible to prove the existence of the activity. *See Carson v. United States*, 560 F.2d 693, 697 (5th Cir. 1977) (evidence revealed taxpayer's involvement, but for lesser time period than assessed by district court); *Gerardo v. Commissioner*, 552 F.2d 549, 555 (3d Cir. 1977) (record barren of evidence linking taxpayer to illegal operation); *Pizzarello v. United States*, 408 F.2d 579, 585 (2d Cir.), *cert. denied*, 396 U.S. 986, 90 S.Ct. 481, 24 L.Ed.2d 450 (1969) (evidence proving gambling operation resulted from illegal search). These cases offer no guidance as to whether an employer is liable for the tax on illegal gambling operations conceded to have taken place on his business premises.

The Treasury Regulation under which Dark was held liable reads as follows:

Any wager or contribution received by an agent or employee on behalf of such person [the owner of the establishment] shall be considered to have been accepted and placed with such person.

Treasury Regulation on Wagering Tax (1954 Code), 26 C.F.R. § 44.4401–2(a)(1).

Dark argues that because his employees were performing actions that were illegal and thus not associated with employment, they were not acting "on [his] behalf." He concludes, therefore, that he cannot be held liable for a tax deficiency under this regulation.

Resolution of the argument rests on agency law. Section 261 of the *Restatement (Second) of Agency* holds a principal liable for the illegal actions of his agent. The principal is not liable, however, to a third party who has reason to know that the agent is acting on his own behalf. *Restatement (Second) of Agency* §§ 165, 166; *National Acceptance Co. of America v. Coal Producers Ass'n, Inc.*, 604 F.2d 540, 542 (7th Cir. 1979) (principal liable only where third party "reasonably believed" agent acting within scope of authority).

Comment g of § 49 of the *Restatement* points out that an agent is authorized to act only for his principal's benefit. "However, the fact that an agent secretly intends to act for a purpose of his own or otherwise to disobey the principal does not prevent the existence of a power to bind the principal to one who relies upon facts which indicate apparent authority, unless the one dealing with the agent has notice of such intent." In this case, the employees took bets ostensibly on behalf of Dark. The subsequent handling of the bets was not disclosed to the bettor, and as far as any bettor was concerned, all bets taken by the employees were made on behalf of the employer.

Dark correctly asserts that the Government agents must have known that his employees were taking bets in a fashion inconsistent with the revenue law. He does not offer to prove, however, nor can it be inferred that the Government agents should have known that the employees were acting on their own rather than Dark's behalf.[3] Under agency law, therefore, the employees

---

**3.** Dark cites *United States v. Calamero*, 354 U.S. 351, 77 S.Ct. 1138, 1 L.Ed.2d 1394 (1957), to avoid liability. The case is inapposite; it holds a delivery boy not liable for the opera-tions of his employer for the act of transporting illegal wagers. The case addresses the converse principle of agency law from that presently under review.

acted "on behalf of" Dark. He is thus liable under the Treasury Regulation.[4]

A contrary conclusion would have deleterious revenue results. It would render the employer free of liability for taxes on revenue resulting from criminal behavior derived from his legal business activity. It would therefore permit a tax fraud scheme whereby an employer could insulate himself from liability for an illegal operation by structuring it with sufficient layers of command to avoid the appearance of his connection.

■■■ B. Dark concedes that the Government may assess taxes based on reasonable projections when records are unavailable. *See Gordon v. Commissioner*, 572 F.2d 193, 195 (9th Cir. 1977), *cert. denied*, 435 U.S. 924, 98 S.Ct. 1488, 55 L.Ed.2d 517 (1978); *Carson v. United States*, 560 F.2d 693, 696 (5th Cir. 1977); *Gerardo v. Commissioner, supra*. He argues, however, that this case is distinguishable because his lack of involvement prevented him from making records of the illegal bets.

This argument lacks support in precedent or reason. If accepted, it would prevent a taxpayer determined to be liable from paying taxes on an illegal scheme merely because records are lacking. A court may use the best available means of assessment in order to comply with the tax rules. *See, e. g., Carson v. United States, supra*, at 696. Dark has not offered to demonstrate a more accurate method.

AFFIRMED.

---

4. Dark asserts that he received no benefit from the illegal operation and should not pay the taxes for it. Nothing prevents him from pursuing legal remedies against those of his employees who did benefit.