**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION,**
Cross-Claimant,

v.

**SHEARSON–AMERICAN EXPRESS, INC.; Shearson-American Express De Puerto Rico, Inc.; Miguel Serrano Arreche; Ponce M.A. Developers, Inc.; Juan Luis Boscio; Owen Beverage; North-American International, Inc.,** Cross-Defendants.

**Jaime N. DAVILA, Cross-Claimant,**

v.

**Miguel SERRANO–ARRECHE,** Cross-Defendant.

Civ. No. 84–0758(RLA).

United States District Court, D. Puerto Rico.

April 15, 1987.

Roberto Boneta, Trias Doval Muñoz Acevedo & Otero, San Juan, P.R., for FDIC.

Gilberto Mayo Aguayo, Mayo & Mayo, Santurce, P.R., for Davila.

Salvador Antonetti, Fiddler Gonzalez & Rodriguez, San Juan, P.R., for Shearson.

José L. Correa Cintrón, San Juan, P.R., for Serrano.

## OPINION AND ORDER

ACOSTA, District Judge.

Before the Court is the motion to dismiss filed by cross-defendants Shearson Lehman Brothers, Inc. ("Shearson") and Shearson Lehman Brothers, Inc. (Puerto Rico) ("Shearson PR") on April 7, 1986, collectively identified as the "Shearson Companies" or "Shearson defendants".[1] Shear-

---

1. Shearson (formerly Shearson American Express, Inc.) and Shearson PR (formerly Shearson American Express, Inc. (Puerto Rico)).

son and Shearson PR seek the dismissal of the Amended Cross-claims filed by the Federal Savings & Loan Insurance Corporation ("FSLIC") against them. Given the history of this litigation and the complexity of the issues at hand, a brief procedural and factual background is in order.

## I. PROCEDURAL AND FACTUAL BACKGROUND

These proceedings were commenced on March 23, 1984 by the Municipality of Ponce ("the Municipality"), a local subdivision of the Commonwealth of Puerto Rico, alleging various claims for relief under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and the federal securities laws. In essence, the complaint charged the defendants with defrauding the Municipality by inducing one of its instrumentalities, the Ponce Municipal Development Authority ("PMDA"), to enter into several financial transactions, "Repurchase Agreements", which PMDA had no authority to enter into and with converting some of the proceeds of these transactions that belonged to PMDA. In substance, these claims were premised primarily on alleged actions of defendant Miguel Serrano Arreche ("Serrano"), a former Vice President and broker of Shearson PR who has since been indicted and convicted in two separate criminal actions in this Court for defrauding the original defendant to this action, Home Federal Savings and Loan Association, of Ponce, Puerto Rico ("Home Federal").[2]

Subsequently, the Municipality's claims against all of the defendants were dismissed pursuant to settlement agreements reached between the plaintiff and the defendants. As a result, the remaining matters before the Court were certain cross-claims and third-party claims. On March 26, 1985, the FSLIC made its first appearance in the case in a motion seeking to be substituted for Home Federal in the cross-claim filed by Home Federal on September 14, 1984 against the Shearson defendants, Serrano and Ponce M.A. Developers, Inc. The FSLIC's motion for substitution was granted by the Court on March 29, 1985. The main reason for this substitution was the demise of Home Federal.

On June 14, 1985, the Shearson defendants filed a motion requesting, *inter alia,* the dismissal of Home Federal's cross-claims for failure to plead fraud with the requisite particularity. On October 21, 1985, the Court dismissed Home Federal's fraud claims against Shearson and granted the FSLIC until December 10, 1985 to file any amended cross-claims against the Shearson defendants which complied with the particularity requirement for fraud claims set out in Rule 9(b) of the Fed.R. Civ.P. Furthermore, the Court instructed FSLIC to indicate in any such amended cross-claims whether the Shearson defendants alleged liability was predicated on their direct actions or on some indirect basis, such as *respondeat superior.*

## II. FSLIC'S CROSS–CLAIMS AGAINST THE SHEARSON DEFENDANTS

On December 10, 1985 (Docket No. 128) the FSLIC filed with the Court its Amended Cross-claims against the Shearson Companies and other defendants. FSLIC alleges that this Court has original subject matter jurisdiction over its Amended Cross-claims pursuant to 12 U.S.C. § 1730(k)(1)(B) (a statute providing for original federal subject matter jurisdiction for actions brought by the FSLIC regardless of the amount in controversy) and 28 U.S.C. § 1331 (federal question jurisdiction) on the basis of 18 U.S.C. § 1961 *et seq.* (RICO), 15 U.S.C. § 77v (the Securities Act of 1933, hereinafter "the 1933 Act"), 15 U.S.C. § 78aa (the Securities Exchange Act of 1934, hereinafter "the 1934 Act") and 15 U.S.C. § 80b–14 (the Investment Advisors Act of 1940, hereinafter "the 1940 Act"). FSLIC claims that this Court additionally has ancillary jurisdiction of any state law claims it asserts against the various defendants.

FSLIC's Amended Cross-claims assert that management for Home Federal in

---

**2.** *United States v. Miguel A. Serrano, et al.,* Cr. 85–24(GG); *United States v. Miguel A. Serrano,*   Cr. 84–381(JP).

1981 approached Shearson PR seeking financial advice and assistance to rehabilitate Home Federal's weak position and to avoid its demise as a separate institution.[3] As a result of these efforts, Home Federal's representatives, commencing in 1981, had various meetings with Serrano at Shearson PR's offices. Throughout these discussions, Serrano acted as a Senior Vice President of Shearson PR and as a registered securities industry professional of Shearson and Shearson PR.

According to the pleadings, in order to financially assist Home Federal, Shearson PR and Serrano obtained from Home Federal its financial statements and received other confidential information about the institution. Shearson PR developed a plan to financially rehabilitate Home Federal. This plan, as proposed or developed, included Home Federal's participation in a Shearson sponsored "Loan-to-Lenders Program", the recapitalization of Home Federal through "Repurchase Agreements", the deposit of Shearson funds in Home Federal, and the placement of brokered funds in Home Federal for their investment by Home Federal in securities and loans. In pursuit of Shearson PR's rehabilitation plan for Home Federal, Serrano and Home Federal's President, Jaime Dávila ("Dávila"), traveled from Puerto Rico to New York City on several occasions for meetings with other Shearson officials and with officers of the Bank Board.

It is further asserted that the first series of alleged fraudulent activities on the part of the Shearson defendants occurred in the Spring of 1982. These activities are referred in the complaint as the "1982 Repo.". Sometime prior to May of 1982, Serrano devised a scheme or artifice to defraud Home Federal to be accomplished through the 1982 Repo. In essence, Home Federal was induced to enter into a repurchase agreement with cross-defendant Ponce M.A. Developers, Inc. ("PDI")

whereby Home Federal sold $3.1 million in Title I Federal Housing Administration ("FHA") loans, which it held, but Home Federal never received any consideration for this sale.

It is claimed that PDI was no more than a shell corporation created by Serrano and Shearson PR to serve as a conduit of "936 funds"[4] to Home Federal. As alleged, Serrano and Shearson PR used Home Federal's $3.1 million in Title I FHA loans, through PDI, to enter into an upstream repurchase agreement with PMDA out of which PDI was to have received $3 million. PMDA, after obtaining the $3.1 million in Title I FHA loans from PDI, originally belonging to Home Federal, entered into a repurchase agreement with Shearson PR using the same $3.1 million as collateral, but actually receiving $3 million in proceeds from Shearson PR out of the transaction. In turn, Shearson PR obtained the $3 million that it turned over to PMDA from Citibank N.A. also through a similar repurchase agreement. All of these transactions occurred the same day.

FSLIC asserts that of the $3 million that PMDA received from Shearson PR, $2 million were used to purchase an off-shore certificate of deposit for the PMDA account at Shearson PR and the remaining $1 million was transferred to PDI's account at Shearson PR. Allegedly, Serrano, acting as an agent of Shearson PR, and PDI kept the $1 million in PDI's account, but not before attempting to pledge a part of these funds to the Federal Home Loan Bank of New York ("FHLBNY") in a fruitless effort to obtain FHLBNY guarantees of Home Federal's liabilities under the Shearson sponsored "Loan-to-Lenders Program".

The complaint then describes a series of predicate acts purporting to be violations of several federal statutes, including wire fraud, mail fraud and securities violations. Dates, places, participants and the *modus*

---

**3.** All of FSLIC's factual allegations set forth in its cross-claims are accepted by the Court as true as required with motions to dismiss. *Chongris v. Board of Appeals of Town of Andover,* 811 F.2d 36 (1st Cir.1987); *Williams v. City of Boston,* 784 F.2d 430, 433 (1st Cir.1986).

**4.** "936 funds" is a general reference to U.S. possession corporations income tax exemption under 26 U.S.C. § 936 which are operating in the Commonwealth of Puerto Rico under its Industrial Tax Incentive Act (13 L.P.R.A. § 252 *et seq.* and § 255 *et seq.;* and Act No. 8 of January 24, 1987).

*operandi* of these mail and wire frauds are all provided. The substance of the frauds pertaining to the sale of securities are also provided together with the alleged fraudulent representations and the alleged non-disclosures of material information relating to the transactions. The complaint alleges that these representations occurred at the times when Serrano proposed that Home Federal enter into the 1982 Repo.

The FSLIC's complaint then relates to a second allegedly fraudulent scheme. It is alleged that sometime prior to July of 1983 a scheme was devised whereby Serrano, acting as a Shearson PR officer, proposed that Home Federal receive $50 million in brokered funds with the understanding that Serrano and Shearson would then invest these funds to insure an adequate return on that capital. Of those funds, $28 million were actually placed at Home Federal in $100,000 FSLIC insured certificates of deposit at above prevailing market rates.

The FSLIC alleges that considering Home Federal's precarious financial condition, the failure to properly invest those funds would have brought about disastrous consequences, as it alleges in fact occurred. Home Federal, it is alleged, was a small, one-branch institution which lacked the financial sophistication to adequately invest these funds without expert advice. Rather than investing the funds properly, Serrano used them for various fraudulent transactions. The complaint alleges that Serrano and others, acting as Shearson officers and employees, purchased securities for Home Federal and in the process converted $2.4 million of Home Federal's money. As a result of the scheme Serrano inflated Home Federal's price for the securities he purchased for the institution. Serrano was convicted as a result of these frauds.[5]

The complaint also alleges that Serrano, acting as a Shearson officer, had arranged the receipt of the brokered funds under the condition that Home Federal grant a $14 million "linked loan" to Universal Tank & Iron Works, Inc., an Indiana corporation which was a poor credit risk. It is alleged that Serrano misrepresented that the loan would be fully collateralized as he was to

structure it, but that he subsequently altered those terms and misrepresented that certain U.S. Treasury stripped coupons would fully secure the principal. Home Federal allegedly suffered an approximate loss of $10,000,000 as a result of this transaction. The complaint alleges that Serrano and Shearson PR's President received fees and commissions as a result of the transaction. The complaint describes, in detail, eleven predicate acts of mail, wire and securities frauds and provides information pertaining to the dates, places, individuals, amounts, means of communications and transfers of funds connected with the frauds.

### III. THE SUFFICIENCY OF THE FSLIC'S CROSS–CLAIMS UNDER RULE 9(b)

Rule 9(b) Fed.R.Civ.P. states the following:

> "In all averments of fraud or mistake, the circumstances constituting fraud or mistake *shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally.*" (Emphasis added).

Courts have cautioned against putting too much emphasis on the Rule's particularity requirement urging the courts to utilize the more simple and flexible approach contemplated by the rules. *Seville Industrial Machinery Corp. v. Southmost Machinery,* 742 F.2d 786, 791 (3rd Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985); *Christidis v. First Pennsylvania Mortgage Trust,* 717 F.2d 96, 100 (3rd Cir.1983); *see also Binkley v. Sheaffer,* 609 F.Supp. 601, 603 (E.D.Pa. 1985). Rule 8(f) provides that "all pleadings shall be construed so as to do substantial justice." Accordingly, it has been held that Rule 9(b) must be read in tandem with Rule 8 which provides for the liberal construction of pleadings. *See, e.g., Simcox v. San Juan Shipyard, Inc.,* 754 F.2d 430, 440 (1st Cir.1985); *Bale v. Dean Witter Reynolds, Inc.,* 627 F.Supp. 650, 652 (D.Minn.1986); *Micro-Medical Industries,*

---

5. See *supra* note 2.

*Inc. v. Hatton,* 607 F.Supp. 931, 936–937 (D.P.R.1985).

■ All that is required to fulfill the particularity requirement of Rule 9(b) is that a complaint set forth the substance of plaintiff's claim with sufficient detail to evoke the defendant's answer since "/Rule 9/ is not to be applied with draconian strictness." *Kimmel v. Peterson,* 565 F.Supp. 476, 481 (E.D.Pa.1983); *Verrecchia v. Paine, Webber, Jackson & Curtis,* 563 F.Supp. 360, 364 (D.P.R.1982). The purpose of Rule 9(b) is to protect defendants from unfair surprise and to give a defendant notice of the nature of the claims against it. *Simcox v. San Juan Shipyard, Inc., supra,* 754 F.2d at 439.

Even though in some situations the identification of the time, place and content of an alleged fraudulent representation may be required to fulfill the rule's purpose to give notice of the conduct charged and to protect a defendant from spurious charges, *see, e.g., McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d 226 (1st Cir.1980), "nothing in the rules requires /it/". *Seville Industrial Machinery v. Southmost Machinery, supra,* 742 F.2d at 791. For instance, it has been held that although a complaint lacked details and relied to some extent upon pleadings based on information and belief, more cannot be demanded where discovery would obtain a greater degree of specificity. *Micro-Medical Industries, Inc. v. Hatton, supra,* 607 F.Supp. at 936–937; *Rich-Taubman Associates v. Stamford Restaurant,* 587 F.Supp. 875, 880 (S.D.N.Y.1984); *Eaby v. Richmond,* 561 F.Supp. 131, 137 (E.D.Pa. 1983). Also, less particularity is required where the plaintiff is not asserting that the fraud was committed against it but against a third party. *Segal v. Gordon,* 467 F.2d 602, 607 (2nd Cir.1972); *Allegaert v. Perot,* 78 F.R.D. 427, 430 (S.D.N.Y., 1978); 5 Wright & Miller, *Federal Practice and Procedure,* § 1298, at p. 413 (1969). Indeed, in some situations specificity may never even be possible, as when fraudulent representations may have been made over a long period of time. If the fraud involved either a course of conduct occurring over an extended period of time or a series of transactions, it is not necessary to recite in detail the facts of each transaction of the fraudulent scheme. *Bale v. Dean Witter Reynolds, Inc., supra,* 627 F.Supp. at 652; *General Accident Insurance Co. v. Fidelity and Deposit Company,* 598 F.Supp. 1223, 1232 (E.D.Pa.1984).

In sum, under the modern federal rules, it is enough that a complaint put the defendant on notice of the claims against him. *See, e.g., Simcox v. San Juan Shipyard, Inc., supra,* 754 F.2d at 439–440; *Seville Industrial Machinery v. Southmost Machinery, supra,* 742 F.2d at 790. "It is the function of discovery to fill in the details, and of trial to establish fully each element of the cause of action". *Seville, Id.; see also, Rich-Taubman Associates v. Stamford Restaurant, supra,* 587 F.Supp. at 880; *Eaby v. Richmond, supra,* 561 F.Supp. at 137; 5 Wright & Miller, *Federal Practice & Procedure,* § 1215 (1969).

■ Applying the foregoing, the Court is of the view that the amended cross-claims of the FSLIC adequately comply with Fed. R.Civ.P. 9(b). The complaint, which is over 50 pages long, contains a great deal of detail with respect to dates, places and the individuals involved in the alleged fraudulent transactions. It places the Shearson defendants on sufficient notice of the exact conduct which is alleged to be fraudulent and specifically pleads that the responsibility of those parties is derivative or vicarious under theories of agency, *respondeat superior* or "controlling person" liability. It also alleges that Shearson failed to adequately manage the affairs of its subsidiary, Shearson P.R., and that the latter recklessly failed to exercise control and supervision over its officers and employees.

It can hardly be said that given those pleadings, these defendants are not on notice of the fraudulent activity charged to their officers and employees and their corresponding liability for that conduct. To the extent that any specific dates pertaining to specific misrepresentations may be lacking, they are not required, either because they are not known at this time to the FSLIC, a third party to the fraudulent conduct, or because they occurred over an extended period of time and are probably

not susceptible of such definition. To the extent possible, discovery will provide those details.

## IV. THE SUFFICIENCY OF THE PLEADINGS TO SUSTAIN VICARIOUS LIABILITY FOR "COMMON LAW FRAUD"

According to the complaint, the Shearson defendants' liability is partially asserted on *respondeat superior* and agency principles. Those defendants allege in their motion to dismiss that with respect to "indirect liability" the FSLIC's allegations are insufficient. It appears that the Shearson Companies first maintain that the agents' or employees' conduct was "unauthorized" and not for the employer or principal's benefit and that the agents did not have "apparent authority" to engage in those transactions.

The frauds charged in the complaint are based on the alleged acts of Shearson PR officers, who are also alleged to have been Shearson employees. The complaint states that Miguel Serrano was Shearson PR's Senior Vice-President, that Francisco Pujol was its President, William Stamps its Treasurer and Manager of Operations, and Raymond Milian an Assistant Vice-President. It is claimed that these individuals constituted the top management of Shearson PR located in Puerto Rico. The complaint also alleges that the transactions under scrutiny benefited the Shearson Companies and were within the scope of employment or the authority granted to those officers. The FSLIC also alleges, that being high corporate officers of Shearson PR, the transactions entered into and actions taken by those individuals were within their "apparent authority".

■ Both *respondeat superior* and express or apparent authority are recognized doctrines for the imposition of both civil and criminal liability on a principal for the acts of an agent. Under *respondeat superior* an employer is liable for the acts of an employee performed within the scope of employment. The servant's acts must have been intended at least in part, to serve the master. Thus, the servant need not be acting for the "exclusive benefit" of the principal, it is enough that the agent intended his acts to produce some benefit to himself and to the principal second. *United States v. Gold*, 743 F.2d 800, 823 (11th Cir.1984), *cert. denied* 469 U.S. 1217, 105 S.Ct. 1196, 84 L.Ed.2d 341 (1985); W. Prosser, Law of Torts §§ 216, 219(1), 231. If the intent to benefit the principal is present, then actual benefit is largely irrelevant. *Standard Oil Co. of Texas v. United States*, 307 F.2d 120 (5th Cir.1962).

■ Liability for the acts of an agent of a corporation can be based on acts within the express or apparent authority of the agent. "/A/pparent authority is the authority which outsiders would normally assume that the agent would have, judging from his position with the company and the circumstances surrounding his past conduct." *Continental Baking Company v. United States*, 281 F.2d 137, 151 (6th Cir. 1960) (approving jury charge). Under apparent authority a principal may be liable even if the conduct was committed solely to advance the agent's illicit scheme. *ASME v. Hydrolevel Corp.*, 456 U.S. 556, 566–67, 102 S.Ct. 1935, 1942–43, 72 L.Ed.2d 330 (1982); Restatement (Second) of Agency §§ 261, 262, 265. In *ASME, supra*, 456 U.S. at 567–568, 102 S.Ct. at 1943, the Supreme Court stated the following with respect to the doctrine of apparent authority:

The apparent authority theory has long been the settled rule in the federal system. See *Ricketts v. Pennsylvania R. Co.*, 153 F.2d [757] at 759 [CA2 1946]. In *Friedlander v. Texas & Pacific R. Co.*, 130 U.S. 416 [95 S.Ct. 570, 32 L.Ed. 991] (1889), the Court held that an employer was not liable for the fraud of his agent, when the employer could derive no benefit from the agent's fraud. But *Gleason v. Seaboard Air Line R. Co.*, 278 U.S. 349 [49 S.Ct. 161, 73 L.Ed. 415] (1929), discarded that rule. In *Gleason*, a railroad's employee sought to enrich himself by defrauding a customer of the railroad through a forged bill of lading. The Court of Appeals had absolved the railroad from liability because the employee perpetrated the fraud solely for his own benefit. But this Court re-

versed, overruling *Friedlander.* Noting that "there was ... no want of authority in the agent," id., at 355 [49 S.Ct. at 162], the Court held the railroad liable despite the agent's desire to benefit only himself. It explained that "few doctrines of the law are more firmly established or more in harmony with accepted notions of social policy than that of the liability of the principal without fault of his own." Id., at 356 [49 S.Ct. at 162].

In a wide variety of areas, the federal courts, like this Court in *Gleason,* have imposed liability upon principals for the misdeeds of agents acting with apparent authority. See, e.g., *Dark v. United States,* 641 F.2d 805 (CA9 1981) (federal tax liability); *National Acceptance Co. v. Coal Producers Assn.,* 604 F.2d 540 (CA7 1979) (common-law fraud); *Holloway v. Howerdd,* 536 F.2d 690 (CA6 1976) (federal securities fraud); *United States v. Sanchez,* 521 F.2d 244 (CA5 1975), cert denied 429 U.S. 817 [97 S.Ct. 59, 50 L.Ed.2d 77] (1976) (bail bond fraud); *Kerbs v. Fall River Industries, Inc.,* 502 F.2d 731 (CA10 1974) (federal securities fraud); *Gilmore v. Constitution Life Ins. Co.,* 502 F.2d 1344 (CA10 1974) (common-law fraud)."

(Footnote omitted).

██ When a case involves a high corporate officer, apparent authority is a proper basis for vicarious liability. *In Re Atlantic Financial Management, Inc. Securities Litigation,* 784 F.2d 29, 31–32 (1st Cir.1986).

The Shearson Companies maintain that the decisions in *Sheldon v. First Federal Savings & Loan Association,* 566 F.2d 805 (1st Cir.1977) and *Green v. Dávila,* 392 F.Supp. 533 (D.P.R.1975) require a dismissal, because allegedly, the complaint fails to plead circumstances attributable to the principal, since an agents authority can only be established by the principal's "words or conduct".

██ According to Shearson, Home Federal should have used "prudent and reasonable diligence to ascertain whether the agent is acting within the scope of his powers," quoting *Green v. Dávila, supra.* Shearson's arguments, however, go more to the merits than the pleadings. The existence of an agency relationship, as well as the scope of the agent's authority, is a question of fact to be decided by the jury. 2 Fletcher Cyclopedia on Corporations, § 437.5 (1982 Rev. ed.) and Supp.1985, *see also, e.g., Equilease Corp. v. M/V Sampson,* 756 F.2d 357, 363 (5th Cir.1985); *Naviera Neptuno S.A. v. All Intern. Freight Forwarders, Inc.,* 709 F.2d 663, 665 (11th Cir.1983); *Jones v. First Equity Corp. of Florida,* 607 F.Supp. 350, 352 (E.D.Tenn. 1985); *Robb Container Co. v. Shoe-Me Co.,* 566 F.Supp. 1143, 1151 (N.D.Ill.1983).

The FSLIC has alleged a continued relationship between Home Federal and Shearson PR throughout which Serrano was permitted to deposit a million dollars of Shearson PR funds at Home Federal, to place $28,000.00 in brokered funds there with Shearson PR's President's knowledge and to use customer accounts to perpetrate the fraud related to the 1982 Repo. According to the FSLIC, Shearson and Shearson PR furnished Serrano with the "instrumentality" by which the frauds were committed as it allowed Serrano and others connected with the frauds to use their offices, customer accounts, employees, telex machines and telephones to further the frauds. Faced with these pleadings and allegations, it cannot be concluded, assuming the veracity of these averments for purposes of this motion as the Court must, that an agency relationship and apparent authority did not exist.

██ Reasonable factual inferences are drawn to aid the pleader and ambiguities are resolved in his favor. *See Quiñones v. U.S.,* 492 F.2d 1269, 1273 (3rd Cir.1974); *Gray v. Occidental Life Ins. Co.,* 387 F.2d 935, 936 (3rd Cir.1968) *cert. denied,* 391 U.S. 926, 88 S.Ct. 1825, 20 L.Ed.2d 665. Those inferences, as they relate to agency and vicarious liability, may be based on several factors. For instance, the authority of an agent to do certain acts may reasonably be inferred from the continuity of the acts themselves, which due to their nature and the manner in which they are performed, the principal would naturally have become cognizant of them and would

have forbidden them, if truly unauthorized. *American Lease Plans, Inc. v. Silver Sand Co.,* 637 F.2d 311, 314 (5th Cir.1981); *Buxton v. Diversified Resources Corp.,* 634 F.2d 1313, 1316 (10th Cir.1980), *cert. denied,* 454 U.S. 821, 102 S.Ct. 105, 70 L.Ed.2d 93; Restatement (Second) Agency § 43. Factors such as the duty of care required to exercise a high standard of supervision and whether the employee was a high level officer or director of the firm are also relevant. *In Re Atlantic Financial Management, Inc., supra,* 784 F.2d at 35; *King v. Horizon Corp.,* 701 F.2d 1313, 1318–19 (10th Cir.1983). In this case, the FSLIC has alleged that the Shearson defendants, as brokerage firms, failed to exercise their duty of care and failed to adequately supervise their employees and officers.

■ That some of the transactions were carried out "outside of the firm" (which the FSLIC disputes) is not controlling, since the nature of the activity may be within the corporation's usual business activities. *See Karlen v. Ray E. Friedman & Co. Commodities,* 688 F.2d 1193, 1198 n. 5 (8th Cir.1982); *Buxton v. Diversified Resources Corp., supra* 634 F.2d at 1316; *cf. Lewis v. Walston & Co., Inc.,* 487 F.2d 617, 624 (5th Cir.1973) ("conduct may be within the scope of employment even if it is unauthorized, if it is sufficiently similar to authorized conduct"). In *Lewis v. Walston & Co., Inc., supra,* 487 F.2d at 620–621, the Fifth Circuit rejected the theory that *respondeat superior* could not apply in a case involving unauthorized trading by a registered representative not executed through the employer brokerage house and from which the employer derived no financial benefit. The Court noted that brokers take many actions not executed through their brokerage houses. The Court found that the employee's regular use of the brokerage firm's facilities and the employee's position as a registered representative justified a finding that the instrumentality used to cause the harm was furnished by the master to the servant and thus the

employee's actions were found to be within the scope of employment. *See also Karlen v. Ray E. Friedman & Co. Commodities, supra,* 688 F.2d at 1198 n. 5.

Finally, turning to *Sheldon v. First Federal Savings & Loan Association, supra,* 566 F.2d 805, there is nothing in that case which would require a dismissal at this stage of the proceedings. *Sheldon* merely stands for the proposition that "if being an officer did not import actual authority, it could not, *standing alone,* be the basis for apparent authority". *Id.* at 809 (emphasis added). *See also Transurface Carriers, Inc. v. Ford Motor Co.,* 738 F.2d 42, 47 (1st Cir.1984).

■ The Amended Cross-claims of the FSLIC sufficiently plead the alleged vicarious liability of the Shearson Companies, under the theories of agency or *respondeat superior.*

## V. VICARIOUS LIABILITY OF THE SHEARSON DEFENDANTS UNDER THE RICO ACT

The Shearson defendants assert that Shearson's [6] only connection to the alleged "racketeering activity" is its purported status as an employer, and as a matter of law, it is not liable under the RICO statute. Thus, the Court is confronted with the issue of whether a corporate defendant, such as Shearson, may be held liable under RICO on the basis *respondeat superior.* [7] This seems to be an issue of first impression. We shall look then to the language of the statute, its legislative history and other pertinent decisions on RICO for guidance.

Section 1964(c) of Title 18 of the United States Code provides as follows:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of suit, including a reasonable attorney's fee.

---

6. The motion does not seem to address the sufficiency of the RICO counts on these grounds with respect to Shearson PR, Shearson's fully guaranteed subsidiary.

7. As stated in *In Re Atlantic Financial Management, Inc., supra,* 784 F.2d at 32, *respondeat superior* is a "status based" grounds of liability in the master/servant context.

Certainly, Section 1964(c) does not on its face restrict the possible range of defendants so as to exclude persons vicariously liable. Furthermore, a review of the pertinent decisions construing the statute and analogous statutory provisions, as discussed below, leads the Court to the conclusion that vicarious liability can be obtained pursuant to the RICO Act.

The RICO statute has been reviewed by the Supreme Court in *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) and *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). In *Turkette* the Court reviewed a criminal case where the court of appeals had interpreted the term "enterprise" within the context of 18 U.S.C. § 1961(4), to include only "legitimate enterprises". The Supreme Court reversed the finding of the appellate court holding that RICO's "broad purpose" mandated a conclusion that the Congressional purpose was not to restrict the term "enterprise" to include only "legitimate enterprises". *Turkette*, 452 U.S. at 586–587, 101 S.Ct. at 2530–2531. In so doing, the Court rejected the argument that an expansive interpretation of RICO would improperly expand the domain of federal law. *Id.*

In *Sedima*, the Supreme Court interpreted RICO in the context of a private civil action seeking treble damages. The Court dismissed the view expressed by various courts of appeals that a prior conviction was required by RICO to establish the predicate "racketeering activity" set forth in Section 1961(1) of the Act to assert a cognizable RICO claim and that only "racketeering injuries" could be asserted as a basis for recovery. The Court, upon a review of the legislative history of the Act's treble damages provision, concluded that the legislative intent was for this provision to be similar to the treble damages provision found in the federal antitrust laws. 473 U.S. at 487, 105 S.Ct. at 3280, 87 L.Ed.2d at 353. According to the Court, this congressional reliance on the expansive provisions of the anti-trust laws in drafting RICO required a very liberal reading of RICO's treble damages section. Indeed, the Court in *Sedima*, noting the remedial purposes of 18 U.S.C. § 1964, held that if

Congress' liberal construction requirement of RICO "is to be applied anywhere, it is in § 1964, where RICO's remedial purposes are most evident." 473 U.S. at 491 n. 10, 105 S.Ct. at 3283 n. 10, 87 L.Ed.2d at 356 n. 10.

In light of the Supreme Court's interpretation of Section 1964 in *Sedima*, this Court reads Section 1964(c) as not totally excluding vicarious liability from its purview. This finding is supported by the Supreme Court's construction of the analogous treble damages provision of the Clayton Act, 15 U.S.C. § 15(a), in *ASME v. Hydrolevel Corp., supra*, 456 U.S. 556, 102 S.Ct. 1935. In that case the Court stated the following in connection with the remedial nature of the Clayton Act treble damages provision, 456 U.S. at 575–576, 102 S.Ct. at 1947:

> Moreover, the antitrust private action was created primarily as a remedy for the victims of antitrust violations. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 485–486 [97 S.Ct. 690, 695–696, 50 L.Ed.2d 701] (1977); see *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746–747 [97 S.Ct. 2061, 2074–2075, 52 L.Ed.2d 707] (1977). Treble damages "make the remedy meaningful by counterbalancing 'the difficulty of maintaining a private suit'" under the antitrust laws. *Brunswick Corp., supra*, [429 U.S.], at 486, n. 10 [97 S.Ct. at 696, n. 10], quoting 21 Cong.Rec. 2456 (1980) (remarks of Sen. Sherman). Since treble damages serve as a means of deterring antitrust violations and of compensating victims, it is in accord with both the purposes of the antitrust laws and principles of agency law to hold ASME liable for the acts of agents committed with apparent authority. See Restatement § 217C, Comment c, p. 474 (rule limiting principal's liability for punitive damages does not apply to special statutes giving triple damages).

We feel that the underlying reasons supporting the *ASME* holding that vicarious liability is permissible in the anti-trust context is equally applicable to the RICO Act.

Moreover, the trend of the law in this area generally holds that normal doctrines

of corporate liability, such as vicarious liability, apply under RICO. *Schofield v. First Commodity Corp. of Boston,* 793 F.2d 28, 31–32 (1st Cir.1986); *Haroco, Inc. v. American National Bank and Trust Co. of Chicago,* 747 F.2d 384, 401, n. 18 (7th Cir.1984); *United States v. Hartley,* 678 F.2d 961, 988–89 (11th Cir.1982); *Morley v. Cohen,* 610 F.Supp. 798, 811 (D.Md. 1985); *Bernstein v. IDT Corp.,* 582 F.Supp. 1079, 1083 (D.Del.1984); *contra Rush v. Oppenheimer & Co., Inc.,* 628 F.Supp. 1188, 1197 (S.D.N.Y.1985) *contra Schofield, supra,* 793 F.2d at 31–32.

Despite the Shearson defendants' arguments to the contrary, we do not view the First Circuit's holding in *Schofield* as altering the foregoing analysis. In *Schofield, supra,* 793 F.2d at 32, the Court agreed that normal rules of agency law apply to RICO claims absent some indication of a contrary Congressional intent. However the First Circuit concluded that, pursuant to Section 1962(c), the "enterprise" and the person liable could not be one and the same because of the manner in which that provision was drafted. The First Circuit held that the term "enterprise" is used in that section to mean "the instrument of the person doing the racketeering" and that it is "logical" that Congress intended to protect "the victimized enterprise from liability" *Id.* at 30–31. It then held that *respondeat superior* could not be used, under this section, to make the "enterprise" liable for the acts of agents and employees, since it thought inappropriate "to use *respondeat superior* to accomplish indirectly what we have concluded the statute generally denies". *Id.* at 33. The Court did not reject the applicability of the doctrine to the other subsections of 18 U.S.C. § 1962 and did not consider situations where the victimized "enterprise" was the plaintiff in the case.

The FSLIC's amended cross-claims, as they relate to 18 U.S.C. § 1962(c), allege, among other things, that Home Federal was an "enterprise" and that Serrano, Shearson and Shearson PR were employed by or associated with that enterprise and conducted, or participated, directly or *indirectly,* in the conduct of, Home Federal's affairs through the pattern of racketeering activity mentioned in the complaint. Shear-

son and Shearson PR are not alleged to be "enterprises" in connection therewith. It is specifically alleged that Shearson employees and Shearson PR high corporate officers, caused Home Federal to carry out wire transfers, receive fraudulent account statements and financial information, accept brokered funds, make loans, accept deposits and enter into investments.

Shearson and Shearson PR, according to *FSLIC,* failed to supervise their employees and permitted them to engage in this conduct. The FSLIC maintains that Shearson and Shearson PR knew or should have known that their employees and officers were engaged in financial and investment activities with Home Federal. Brokerage firms, such as the Shearson defendants, have a duty to control and supervise their employees and to "establish a separate system to follow-up and review to determine that the delegated authority and responsibility is being properly exercised". New York Stock Exchange, Rule 342.

The remedial purposes of §§ 1964 and 1962(c) are consistent, in this case, with application of *respondeat superior* as a basis for liability. As stated in *ASME v. Hydrolevel Corp., supra,* 456 U.S. at 572, 102 S.Ct. at 1945, if the principal is liable, it is much more likely that similar violations will not occur in the future since pressure will be brought on the organization to see to it that its agents abide by the law.

Allowing this action furthers the major purpose of the RICO statute which is "to address the infiltration of legitimate businesses by organized crime", *Turkette, supra,* 452 U.S. at 591, 101 S.Ct. at 2532. According to the pleadings, the infiltration of Home Federal, a legitimate business, was accomplished under the cloak and status of defendant Serrano's high position as a Shearson and Shearson PR employee and officer. The Court finds it would be inconsistent with the remedial purposes of the Act not to permit Home Federal a § 1962(c) claim against its infiltration in these circumstances. *Schofield v. First Commodity Corp. of Boston, supra,* 793 F.2d at 32.

## VI. SCIENTER AND THE SECURITIES CLAIMS

The Shearson defendants maintain in their motion to dismiss that the "FSLIC has mistakenly alleged Shearson's negligence as a sufficient level of mental awareness to impute fraud liability to Shearson". The FSLIC's claims are premised on the *scienter* of one of the Shearson Companies' officers and employees, namely codefendant Serrano. Vicarious liability is premised on Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t, and principles of *respondeat superior* and agency law.

Section 20(a) reads:

(a) Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

This provision makes a controlling person jointly and severally liable to the same extent as the controlled person would be. It requires a finding of liability unless the controlling person (1) "acted in good faith" and (2) did not "induce" the violation. *In Re Atlantic Financial Management, Inc., supra,* 784 F.2d at 30.

■ The FSLIC's Amended Cross-claims clearly satisfy any scienter requirement, by stating that the acts of the controlled persons were willfully made, with fraudulent intent and as part of a scheme or artifice to defraud and deceive Home Federal. By pleading that the Shearson defendants, as controlling persons, failed to comply with the "good faith" standard under Section 20(a) by their alleged failure to diligently establish, maintain and enforce a proper system of supervision and control, the FSLIC's pleadings are sufficient. In this regard the Shearson defendants have the burden of proof of establishing their good faith. *See Paul F. Newton & Co. v. Texas Commerce Bank,* 630 F.2d 1111, 1120 (5th Cir.1980); *G.A. Thompson & Co., Inc. v. Partridge,* 636 F.2d 945 (5th Cir.

1981); *Rolf v. Blyth, Eastman Dillon and Co., Inc.,* 570 F.2d 38, 44–45 (2nd Cir.), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978); *Hoffman v. Estabrook and Co., Inc.,* 587 F.2d 509, 516 (1st Cir. 1978); *Kirkland v. E.F. Hutton and Co., Inc.,* 564 F.Supp. 427, 446–448 (E.D.Mich. 1983); *Kaufman v. Magid,* 539 F.Supp. 1088 (D.Mass.1982).

"Good faith" requires not only the establishment of a proper system of supervision, but also its diligent enforcement. *G.A. Thompson & Co., Inc. v. Partridge, supra,* 636 F.2d at 959, *Cf. Paul F. Newton & Co., supra,* 630 F.2d at 1120.

■ The FSLIC also premises liability on *respondeat superior* and agency. These are now recognized grounds for vicarious liability in securities fraud cases. *In Re Atlantic Financial Management, Inc. Securities Litigation, supra,* 784 F.2d at 29; *Holmes v. Bateson,* 583 F.2d 542 (1st Cir.1978); *A.J. White & Co. v. SEC,* 556 F.2d 619 (1st Cir.), *cert. denied* 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977); *Verrecchia v. Paine, Webber, Jackson & Curtis, supra,* 563 F.Supp. at 364–365.

■ The Shearson defendants' assertion that they could not be liable as "controlling persons" for Serrano's conduct because, allegedly, they could not "control" Serrano in relation to acts he undertook "on his own" and for his personal benefit outside the parameters of his agency is inapposite. While this argument is facially appealing, it also goes to the merits and thus is irrelevant for purposes of ruling upon the Shearson's defendants' motion to dismiss.

The FSLIC disputes the Shearson Companies' assertion that Serrano acted solely for his personal benefit and not with the interest to also benefit Shearson, in whole or in part. Regardless of whether or not Serrano intended to benefit the corporation Shearson may also be liable under the apparent authority doctrine since Serrano's acts were those of a high corporate official. *ASME v. Hydrolevel Corp., supra,* 456 U.S. at 556–67, 102 S.Ct. at 1935–43; *In Re Atlantic Financial Management, Inc., supra,* 784 F.2d at 31–32. Moreover, FSLIC's

assertion that these acts were undertaken at least in part for the Shearson defendants' benefit must be accepted as true for purposes of this motion.

The FSLIC also disputes Shearson's contention that Serrano's conduct with regards to Home Federal was beyond Shearson's "control". It is asserted that most of Serrano's activities, such as entering into repurchase agreements, executing the purchase of securities, rendering financial advice, placing deposits, structuring loans and the like were the types of activities that he regularly performed and was authorized to execute within his employment with Shearson.

The FSLIC also alleges that Shearson, pursuant to the New York Stock Exchange Rules, had a duty to control and supervise Serrano, including the prohibition against employees of member firms engaging in outside activities concerning "securities, financial and kindred business/es/". New York Stock Exchange Rule 346(b). It is maintained that PDI was such a kindred business and that Shearson PR knew of Serrano's connection therewith. Also, the FSLIC alleges that the duty to supervise was further breached in connection with New York Stock Exchange Rule 405, which imposes upon Shearson the duty to learn the essential facts relating to each customer and order carried and accepted by a member firm. It is alleged that by permitting PDI to have an account with Shearson and failing to learn of the alleged frauds perpetrated through Serrano's use of that account, the Shearson defendants also failed to properly control Serrano.

■ Although it is acknowledged that the mere failure to comply with New York Stock Exchange Rules does not constitute fraud *per se,* in the present context it may serve as evidence to support such claims. *Miley v. Oppenheimer & Company, Inc.,* 637 F.2d 318, 333 (5th Cir.1981); *Mihara v. Dean Witter & Co., Inc.,* 619 F.2d 814, 824 (9th Cir.1980); *Kirkland v. E.F. Hutton & Co., Inc.,* 564 F.Supp. 427, 443 (E.D.Mich., 1983).

## VII. IMPLIED REMEDIES UNDER THE SECURITIES LAWS

### (a) *Section 17(a) of the 1933 Act*

■ The Shearson Companies maintain that no implied remedies are available under § 17(a) of the Securities Act of 1933, 15 U.S.C. 77 q(a) and that any of the FSLIC's claims premised on that statute should be dismissed. The existence of an implied remedy under Section 17(a) has long been the subject of great discrepancy among the courts and has never been conclusively decided either by the Supreme Court, *Herman & MacLean v. Huddleston,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983) or the First Circuit, *Cleary v. Perfectune,* 700 F.2d 774, 779 (1st Cir.1983) even though in *Cook v. Avien, Inc.,* 573 F.2d 685, 698, n. 30 (1st Cir.1978) the Court *sub silentio,* seemed to recognize such a cause of action. *See Valles Salgado v. Piedmont Capital Corp.,* 452 F.Supp. 853, 857–58 (D.P.R. 1978). Having reviewed these cases, we recognize the existence of an implied private remedy under Section 17(a) of the 1933 Act.

### (b) *Section 206 of the Investment Advisors Act and Sections 15(c)(1) and (2) of the Securities Exchange Act of 1934*

■ Shearson also maintains that no implied remedies exist under Section 206 of the Investment Advisors Act of 1940, 15 U.S.C. § 80b–6 and Sections 15(c)(1) and (2) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o. The FSLIC responds that its claims under the Investment Advisor's Act are limited to restitution for any fees or consideration paid. So limited, it would appear that pursuant to Section 215 (15 U.S.C. § 80b–15) of the Act and the Supreme Court's ruling in *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 18, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979) such an implied private cause of action for restitution exists.

■ With respect to Sections 15(c)(1) and (2) of the 1934 Act, the FSLIC acknowledges that no implied causes of action have ever been held to exist, but maintains that in view of the similarity in wording to Rule

10b–5 and to the extent the claimed violations of these sections involve "fraud in the sale of securities", it has standing to allege and prove them as RICO predicate acts under 18 U.S.C. Section 1961(1). To the extent they are so alleged, the Court finds that the FSLIC has standing. At least one district court, in this Circuit, has decided a similar point. In *Spencer Companies, Inc. v. Agency Rent-A-Car, Inc.*, 1981–82 Fed. Sec.L.Rep. (CCH) Par. 98,361 (D.C.Mass. 1981) the Court held that under the RICO Act a party had standing to claim a violation of Section 13(d) of the Securities Exchange Act of 1934 for which no implied cause of action exists. That the RICO Act was so intended is apparent from a reading of the long list of "racketeering activity" contained in 18 U.S.C. § 1961, including gambling, narcotics offenses, contraband of cigarettes, interstate transportation of stolen properties and other criminal violations which do not necessarily imply private causes of action.

VIII. THE FSLIC'S STATE LAW CLAIMS ARE PROPERLY BEFORE THIS COURT REGARDLESS OF THE STATUS OF THE FEDERAL CLAIMS IT ASSERTS AGAINST THE SHEARSON DEFENDANTS

12 U.S.C. § 1730(k)(1) provides, inter alia, as follows:

Notwithstanding any other provision of law, (A) /FSLIC/ shall be deemed to be an agency of the United States within the meaning of section 451 of Title 28; (B) any civil action, suit, or proceeding to which /FSLIC/ shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy ... *Provided,* that any action, suit, or proceeding to which /FSLIC/ is a party in its capacity as conservator, receiver, or other legal custodian of an insured State-chartered institution and which involves only the rights or obligations of investors, creditors, stockholders, and such institution under State law shall not be deemed to arise under the laws of the United States ...

In this instance the FSLIC's Amended Cross-claims against the various defendants, including the Shearson defendants, are asserted on behalf of FSLIC in its corporate capacity, as opposed to its capacity of "conservator, receiver, or other legal custodian" of a pertinent institution. FSLIC's Amended Cross-claims para. 1. The FSLIC alleges that it obtained the right to pursue the claims it asserts herein by an assignment of all of the rights of the now defunct Home Federal. As previously stated, this Court is bound at this juncture to accept all allegations in the FSLIC's pleadings as true. Moreover, it is clear that claims that the FSLIC obtains by assignment are not encompassed by the proviso of section 1730(k)(1). *FSLIC v. Fielding*, 309 F.Supp. 1146, 1150 (D.Nev.1969), *cert. denied,* 400 U.S. 1009, 91 S.Ct. 567, 27 L.Ed.2d 621 (1971). *See also First Federal Savings & Loan Association of Pittsburgh v. Oppenheim, Appel, Dixon & Co.,* 629 F.Supp. 427, 447 (S.D.N.Y.1986).

Any argument that the proviso of Section 1730(k)(1) somehow renders FSLIC's state law claims not subject to this Court's original subject-matter jurisdiction is frivolous.

First, any intimation that somehow the FSLIC's status in this action is as a "receiver" for Home Federal are without substance. Second, and more importantly, even if FSLIC's Amended Cross-claims are brought in its capacity as receiver for Home Federal, there is no basis in law whatsoever to conclude that the proviso of Section 1730(k)(1) would divest this Court of jurisdiction over FSLIC's state law claims.

At the outset, the proviso makes it clear that it is only applicable in instances where the FSLIC is suing as a conservator, receiver, or custodian for a *"State-chartered institution"* and paragraph twelve of the FSLIC's Amended Cross-claims alleges that "Home Federal was a *federally chartered savings and loan association."* Even if Home Federal was a State-chartered institution, the proviso would still be unapposite since it plainly indicates that it is applicable where the action "involves

only the rights or obligations of investors, creditors, stockholders." The Shearson defendants do not appear to be "investors, creditors", or "stockholders" of Home Federal.

Accordingly, the Shearson defendants' objections to this Court's jurisdiction over the FSLIC's state law claims are hereby rejected.

### CONCLUSION

For the foregoing reasons, the motion to dismiss the Amended Cross-claims of FSLIC filed by the Shearson defendants on April 7, 1986 (docket No. 141) is hereby DENIED.

IT IS SO ORDERED.