OPINION OF THE COURT
Arthur D. Spatt, J.
BACKGROUND
By deed dated April 16,1979, defendant Joseph J. Farino (Joseph) transferred to his mother, codefendant Mary Farino (Mary), without consideration, title to the single-family *375 dwelling known as premises No. 1841 Kent Street, West-bury, New York.
By summons and complaint dated March 25,1981, plaintiff, who is the former wife of Joseph, commenced this action seeking a judgment, pursuant to section 278 of the Debtor and Creditor Law vacating and setting aside the afore-mentioned conveyance as “fraudulent”. Specifically, the complaint alleges, in pertinent part, as follows:
“fifth: On or about the 16th day of April, 1979, the defendant Joseph j. faring, with intent and purpose to hinder, delay and defraud plaintiff of her rights past, present and future, under the terms of said Judgment of Divorce, caused to be conveyed and did convey the premises aforesaid to the defendant, mary faring.
sixth: That such transfer and conveyance was wholly without fair consideration, and that the defendant, mary faring, accepted the transfer and conveyance with the knowledge of the wrongful and fraudulent intent and purpose.”
This matter came before me for trial without a jury. At the conclusion of plaintiff’s direct case, plaintiff moved to conform the pleadings to the proof and to add a theory of “constructive fraud” (Debtor and Creditor Law, § 273-a) to the pleaded theory of “actual fraud”. (See Debtor and Creditor Law, §§ 275, 276.) This motion to amend was granted.
THE TRIAL
After a marriage of some 24 years’ duration, Alba and Joseph Farino were divorced by judgment of the Supreme Court, Suffolk County, dated January 21,1977 (Lazer, J.). Said judgment fixed Joseph’s obligation vis-a-vis alimony and child support as follows: “ordered, adjudged and decreed that the defendant shall pay to the plaintiff, by check or money order drawn to her order and forwarded on Thursday of each week, commencing as of July 29,1976, to the plaintiff at her residence, or at such other place as she may designate in writing, the sum of $275 per week as alimony, plus the sum of $150 per week for the maintenance of the three infant children, Marianne, barbara ann and Anthony, making a total sum of $425 per week”.
*376 Plaintiff testified, and it is not disputed, that after entry of the above judgment, Joseph failed to comply with the terms thereof. Thus, on several occasions, it was necessary for plaintiff to move the court for entry of money judgments (Domestic Relations Law, § 244) and for other relief.
Specifically, by order of the Supreme Court, Suffolk County, dated July 28, 1977 (Lazer, J.), plaintiff was granted, inter alla, a money judgment in the sum of $15,700. This judgment was the subject of an appeal, which decision is reported at Farino v Farino (63 AD2d 691).
Thereafter, on September 5, 1978, pursuant to order of Justice McInerney, a judgment for further arrears was entered in the sum of $15,055. By order dated February 5, 1979 (McCarthy, J.), plaintiff was granted an additional money judgment in the sum of $4,725.
While Joseph conceded that these last two judgments were “unsatisfied” at the time of the subject real property transfer, he noted that on April 5, 1979, a date prior to the transfer, he posted the sum of $29,030 with the County Clerk, thus obtaining a stay of said judgments pending appeal.
By “Counter-Order and Judgment” dated March 4, 1981 (McInerney, J.) and thus entered subsequent to the date of the conveyance at issue herein, plaintiff was granted, inter alla, an additional money judgment in the sum of $31,900.
Finally, by virtue of an order dated May 11, 1981, plaintiff was awarded an additional money judgment in the sum of $7,510.
At trial it was undisputed that only the later two judgments remain unsatisfied. In this regard, it should be noted that the September 5, 1978 and February 5, 1979 judgments were in fact satisfied in or about January, 1980, from the funds on deposit with the County Clerk.
Plaintiff testified, without contradiction, that Joseph’s last “payment” vis-a-vis alimony and support, albeit in a sum less than required, was in or about November, 1979.
Plaintiff testified that the property in question, to wit: 1841 Kent Street, Westbury, New York, was the marital residence for approximately 13 years. She noted that she, *377 Joseph and their three children moved to the Kent Street residence from another residence owned by Joseph’s family and located on Rushmore Street, Westbury. The Rushmore Street residence is located in a “commercial” zone. The Kent Street house is located in a residential neighborhood.
Plaintiff testified that at the time she, Joseph and the children moved into the Kent Street residence, title was held by Joseph’s father, Fiore Farino. Plaintiff noted that when they moved into the Kent Street property, the defendant Mary and her husband, Fiore Farino, moved into the now vacant Rushmore Street property.
Further, plaintiff testified that in or about 1965, her father-in-law Fiore Farino, who subsequently died in 1969, transferred title to the Kent Street property to his son Joseph. Plaintiff noted that she, defendant and the children continued to reside at the Kent Street premises until 1975. Divorce proceedings were instituted in 1976. Plaintiff stated that she vacated the Kent Street property (in 1975), defendant Mary (Flore’s widow), who had been residing at the Rushmore Street property, and who had also resided in a residence located on Dover Court, Bay Shore, New York, moved back into the Kent Street property. Accompanying Mary was an unmarried daughter. Both Mary and said daughter currently reside at Kent Street. Since 1979, Mary has had title thereto.
Conceding that she generally was not involved in Joseph’s business transactions, and that she never “questioned” Joseph about the Kent Street property, plaintiff testified that there was never any discussion which indicated that Joseph intended to return title to the Kent Street property to Mary after they (plaintiff and Joseph) ceased to reside at said premises. Plaintiff testified that “Kent Street was Joseph’s house permanently”. Further, plaintiff testified that there was no discussion or “understanding” with Mary that the property (Kent Street) would be returned to her.
Plaintiff conceded that at the time of the conveyance at issue (April 16, 1979), defendant Joseph also owned real property in Bay Shore (valued at $150,000), and Bellport, and he owned stock in three corporations. Thus she conceded that the subject transfer did not render Joseph *378 insolvent. Indeed she testified that Joseph accumulated these assets by dint of his hard work in family business — including real estate, concrete work and trucking.
Finally, plaintiff testified that as of the date of trial, she was awaiting a decision after trial in a separate action in Supreme Court, Suffolk County, by which action she sought to set aside as fraudulent certain conveyances of real property made by defendant Joseph to Sue C. Farino, his second wife.
Subsequent to the conclusion of the trial, the court was furnished with a memorandum decision of the Supreme Court, Suffolk County, dated December 18, 1981, wherein Justice Orgera held, in pertinent part, as follows:
“Neither the deeds nor the stock certificates indicate any consideration for the transfers. The defendants’ attempts to show consideration in the form of Sue Farino’s caring for Joseph during his illness and assisting in the management of Fiore Realty were not acts ‘unequivocally referable’ to the transfers (Burns v. McCormick, 233 N.Y. 230), and fell far short of the necessary proof. Sue Farino’s testimony that she advised the bank which held the mortgage on her condominium that she had married Joseph and intended that they own all property on a 50-50 basis was never followed by a conveyance of any interest in the condominium to Joseph Farino. Accordingly, the court finds that there was no consideration paid by defendant Sue Farino for the conveyances made to her (Neilson v. Sal Martorano, Inc., 36 A.D.2d 625, 319 N.Y.S.2d 480) ***
“Here, in creating a tenancy by the entirety of real property that was in his name alone, the defendant relegated creditors to a position where they could realize on their judgments only if Joseph and Sue Farino were divorced or if Sue were to predecease Joseph. This certainly would hinder and delay a creditor and is, therefore, fraudulent as to creditors. Even if there were no actual intent to defraud, any conveyance made without fair consideration for the purpose of creating an asset position whereby the debtor is unable to pay his debts is fraudulent as to creditors (Bennett v. Bennett, 62 A.D.2d 1154,404 N.Y.S.2d 171). Here, by placing the real property in his name and his *379 co-defendant’s name, Joseph Farino impaired his ability to sell or mortgage the property so as to satisfy his obligation without Sue Farino’s consent * * *
“Accordingly, for all the foregoing reasons, the court declares that the following conveyances are fraudulent as to the plaintiff:
“1. Deed from Joseph Farino to Joseph J. Farino and Sue C. Farino, his wife, dated November 1, 1978, recorded in the Suffolk County Clerk’s Office April 12, 1979, in Liber 8610 of conveyances at page 44;
“2. Deed from Joseph J. Farino to Joseph J. Farino and Sue C. Farino, his wife, dated March, 1980, recorded in the Suffolk County Clerk’s Office April 16,1980, in Liber 8807 of conveyances at page 248;
“3. Stock Certificate of Fiore Contracting Corp. in the name of Sue C. Farino for 30 shares dated July 26, 1977; Stock Certificate of Fiore Realty Corp. for 30 shares in the name of Sue C. Farino, dated July 26, 1977; Stock Certificate of Farino Estates Corp. for 30 shares in the name of Sue C. Farino, dated July 26, 1977; and the related transfer records of the corporation.” (Emphasis supplied.)
Defendant Joseph Farino testified that his parents, Fiore and Mary, purchased the Kent Street property in 1959-1960. Joseph testified that, after he and his family had lived in the Kent Street residence for a period of two years, Fiore Farino, in 1965, transferred title to him for “no consideration”. Joseph further testified that, at the time of his father’s death in 1969, codefendant Mary transferred all the family assets to him and his brothers and sisters. This transfer of assets did not include the Kent Street property, as title to same was already in Joseph’s name. He noted that the only “asset” retained by Mary was a mortgage on certain real property which she had “given away”.
Joseph testified that from 1963 to 1975 he had “discussions” with plaintiff vis-a-vis the Kent Street property. He stated that it was understood by plaintiff and himself that they would remain at Kent Street until the “kids grew up”, and that they would then move “out on the Island”. He further stated that he also discussed with plaintiff, sometimes in Mary’s presence, his intention to return the Kent Street property to his mother.
*380 Joseph noted that although he and plaintiff vacated the Kent Street property and Mary resumed residency thereat in or about 1975, he did not transfer the title of said premises to Mary until April 16,1979. He testified that the delay in transferring the title was occasioned by his failing health (diabetes, heart attack) and by a pending Federal criminal matter in which he was incarcerated in 1980. He stated he wanted all these problems resolved prior to the transfer. He noted that in 1978 and 1979, he was hospitalized on two or three occasions for a heart condition. However, he also stated he remarried in May, 1978.
Joseph testified that he transferred title to Mary in April, 1979, because “it was hers all along”. He further noted, in an apparent contradiction to his prior testimony, that he was prompted to consummate the transfer in April, 1979, because of his health, his remarriage, and his pending incarceration. He stated that he wanted the property to go to his mother rather than his second wife.
As noted above, Joseph testified that on April 5, 1979, a date prior to the subject conveyance, he posted $29,030 in cash with the County Clerk to secure all the then current outstanding judgments. He further testified that at the time of the conveyance, there were no actions (or motions) then pending against him.
Defendant Mary Farino testified that as of April, 1979, she has had legal title to the subject premises. She stated that she has had a good relationship with her son Joseph, and that they have helped each other financially.
She testified that after her husband’s death in 1969, she lived in the Rushmore Street residence while Joseph and his family lived in Kent Street. Mary stated that her husband had bought the Kent Street property “for us”, and that they (her husband and her) had “changed” houses with “Joe and Alba” because of the children.
Mary testified that during the 10-year period of Alba and Joseph’s residence at Kent Street, she spoke to them about the fact that the house was to be “mine”.
Noting that she moved into Kent Street in 1975, Mary stated that she did not seek a deed from Joseph until 1979 because of (1) his illness; (2) his impending jail term; (3) *381 her own illnesses; and (4) her desire not to “pressure him”. She testified that there was never any discussion between Joseph and herself relative to a plot to “hurt Alba”.
On cross-examination, Mary noted that while she did live in Bay Shore for a short period of time, she felt such area “too remote” and did not accept same as a residence in lieu of Kent Street. Indeed, she testified on cross-examinatian that her husband had said he was giving the deed to Kent Street to Joseph “on account of the children” but that “in case anything should happen, the house is always yours”.
On rebuttal, while conceding that her “ultimate dream” had been a house on the water (Bay Shore), plaintiff reiterated that she never conversed with Joseph or Mary with respect to the house “belonging” to Mary.
CONTENTIONS OF THE PARTIES
Plaintiff, relying upon theories of both constructive fraud (Debtor and Creditor Law, § 273-a) and actual fraud (Debtor and Creditor Law, §§ 275, 276), contends that the April 16, 1979 conveyance of the Kent Street property by defendant Joseph was fraudulent.
Plaintiff concedes that Joseph was not rendered “insolvent” (see Debtor and Creditor Law, § 271) by virtue of the subject transfer and that section 273 of the Debtor and Creditor Law is not applicable.
However, asserting that the subject conveyance was made “without fair consideration”, and further asserting that the existence of a judgment of divorce itself satisfied section 273-o’s requirement that there be a “judgment * * * docketed against him [Joseph]”, and noting that, on the date of the subject transfer two “judgment of arrears” (dated Sept. 5, 1978 and Feb. 5, 1979) arising under the divorce decree remained unsatisfied by defendant, plaintiff contends that she has proven a “constructive fraud” pursuant to section 273-a of the Debtor and Creditor Law requiring this court to void the conveyance.
In the alternative, plaintiff asserts she has also established, by the proof proffered vis-a-vis the circumstances surrounding the subject conveyance, that in making said *382 conveyance, defendant Joseph, with codefendant Mary’s knowledge, actually intended to “hinder, delay or defraud” her.
Not so, contend defendants. They assert that the theory of “constructive fraud” set forth in section 273-a of the Debtor and Creditor Law is not applicable to the facts of this case, as it is conceded that at the time of the conveyance the only “unsatisfied” money judgments were those upon which a stay of enforcement existed pursuant to defendant’s deposit into court of the sum set forth in said judgments.
Moreover, defendants argue there has been no proof of any “actual intent” to defraud or hinder and delay. Defendants maintain that given what they allege was a longstanding agreement to return the property at issue to Mary, and given the fact that, at the time of the transfer, no sums were due and owing in excess of sums posted with the County Clerk, they have rebutted any inference that the defendants intended to defraud plaintiff.
CONCLUSIONS

As to the Claimed Constructive Fraud

It is well settled that a former wife, having a claim for alimony under the terms of a decree of divorce or separation agreement is, whether such claim be matured or otherwise, a “creditor” of her former husband for purposes of sections 270 and 278 of the Debtor and Creditor Law. (See Soldano v Soldano, 66 AD2d 839; Enthoven v Enthoven, 167 Misc 686, affd 256 App Div 813; Leitman v Leitman, 21 Misc 2d 653, affd 9 AD2d 682, mot for lv to app den 9 AD2d 783; Bowler v Bowler, 46 Misc 2d 821; Spear v Spear, 101 Misc 2d 341.)
Section 273-a of the Debtor and Creditor Law provides as follows:
“§ 273-a. Conveyances by defendants
“Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the *383 defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.”
The term “fair consideration” set forth above is defined in section 272 of the Debtor and Creditor Law as follows:
“§ 272. Fair consideration
“Fair consideration is given for property, or obligation,
“a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
“b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.”
Upon a review of the credible evidence, the court finds that plaintiff indeed established that no “fair consideration” existed for Joseph’s conveyance of the Kent Street property to his mother.
Assuming, arguendo, that Joseph conveyed the subject property to Mary in “good faith”, the only consideration which might have underpinned such transfer would be in the nature of “love and affection”. Such “love and affection”, assuming it to have been the basis of this transfer, cannot legally support same. (See Rush v Rush, 19 AD2d 846; Marine Midland Bank v Stein, 105 Misc 2d 768.) However, as discussed below, this court does not believe that this conveyance was, in fact, made in “good faith”. Rather, the court finds that this transfer was made in order to “hinder and delay” plaintiff in her efforts to enforce the judgment of divorce.
It might be argued that the purported long-standing promise of Joseph to convey the subject property to Mary (whose husband had conveyed same to Joseph) when the “kids grew up” constituted, in an equitable sense, an “antecedent debt” amounting to “fair consideration”. While such is an interesting theory, the court need not directly address same, as the court does not credit as true the testimony of Joseph and Mary that such promise existed. Indeed, upon a review of all the testimony and upon observing the demeanor of the witnesses at trial *384 (particularly the evasive responses of defendant Joseph to many questions), the court does not believe the testimony of Joseph and Mary that such a long-standing promise to convey existed.
Having found that “no fair consideration” for the subject conveyance existed, the court, in determining the applicability of section 273-a of the Debtor and Creditor Law must next determine if a “judgment” in “an action for money damages” had been docketed against defendant at the time of the conveyance, or if he was a defendant in such an action at such time. If the court answers either of these questions in the affirmative, it must then be determined whether defendant, after “final judgment” in such an action, failed to “satisfy” same.
Clearly, at the time of the conveyance, Joseph was not a defendant in an action for money damages.
Contrary to plaintiff’s contention, the court finds that, insofar as relief pursuant to section 273-a of the Debtor and Creditor Law is concerned, the docketing of a “simple” judgment of divorce is not sufficient. While plaintiff had rights accruing under such divorce decrée, such judgment did not arise out of an “action for money damages”.
The court does find, however, that the September, 1978 and February, 1979 “money judgments of arrears” obtained by plaintiff via application pursuant to section 244 of the Domestic Relations Law is a sufficient “judgment” for purposes of section 273-a of the Debtor and Creditor Law. The court recognizes that an application for a judgment of arrears under section 244 of the Domestic Relations Law is not “an action for money damages”. (See Lo Cascio v Lo Cascio, 101 Misc 2d 679; and see 2 Foster — Freed, Law and the Family, § 25:10, p 192.) The court is of the opinion that such procedural distinction — albeit clear — is not such as to foreclose a spouse who has obtained a bona fide money judgment from availing his or herself from the provisions of the Debtor and Creditor Law which surely was meant by the Legislature to be available to such an individual.
While the court thus finds that two “money judgments” were indeed docketed against defendant Joseph Farino at the time of the subject conveyance, the court also finds that *385 plaintiff has failed to show that “after final judgment”, such judgments remained unsatisfied.
It is true that the afore-mentioned money judgments became “final” after their entry by the trial court, notwithstanding the pendency of an appeal (see Matter of Bailey [Bush Term. Cp.], 291 NY 534; 5 Weinstein-Korn-Miller, NY Civ Prac, par 5011.03). However, it must be recalled that here, by virtue of his deposit into court of the sum at issue, defendant obtained a “stay” of said judgments. (See CPLR 5519, subd [a].) Indeed, in January, 1980, plaintiff collected her money judgments for the sum so deposited. Thus it cannot be said, in light of such ultimate payment, that the money judgments at issue were not satisfied. For this reason, the court finds that plaintiff’s claim for relief under section 273-a of the Debtor and Creditor Law is without merit.

As to the Claimed Actual Fraud

Section 276 of the Debtor and Creditor Law (as added by L 1925, ch 254, § 1, eff April 1, 1925) provides as follows:
“§ 276. Conveyance made with intent to defraud
“Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.”
It is now clear that where a creditor establishes that a debtor in conveying certain property did so with an “actual intent to hinder and delay” said creditor in reaching said property to satisfy a debt, such conveyance may be set aside even where no actual “fraud” has been shown. (See Flushing Sav. Bank v Parr, NYLJ, April 29,1981, p 11, col 6.) Proof of such intent need not be proven by direct evidence, but may be inferred from the circumstances surrounding the transfer. (See United Parcel Serv. v Norris Corp., 102 Misc 2d 231; De West Realty Corp. v Internal Revenue Serv. of U. S., 418 F Supp 1274; 24 NY Jur, Fraudulent Conveyances, § 12.)
Upon a review of all the testimony, and upon the reasonable inferences to be drawn therefrom, the court finds that plaintiff has established, by clear and convincing *386 evidence, that defendant Joseph Farino, in conveying the subject premises, did so with the purpose of hindering and delaying plaintiff in her attempts to enforce her rights as a “creditor” under the judgment of divorce. Further, the court finds that, at the time of such transfer, defendant Mary Farino, having paid no consideration for the property, took same with an awareness that such transfer might indeed hinder and delay plaintiff in the enforcement of her rights.
In reaching the above conclusions, the court has considered (as above noted) and rejected as not credible the defendants’ assertion that the transfer was made pursuant to a long-standing agreement.
In reaching the conclusion that defendants made the conveyance to hinder and delay plaintiff, the court has considered the following factors: (1) the relationship of the defendants Joseph and Mary which are both familial and, by their own testimony, financial; (2) the fact that no consideration was paid by Mary for the property; (3) the fact that Joseph had, on a nearly perpetual basis, failed to make timely alimony payments necessitating extensive postjudgment matrimonial litigation by plaintiff; (4) the fact that, at or about the same time this conveyance was made, Joseph transferred much, if not all, of his other property to his new wife, which transfers have been set aside as fraudulent; and (5) the fact that, although Mary resumed residence at Kent Street in 1975, the conveyance did not occur until April, 1979.
The court does not credit as true defendants’ contention that Joseph’s health and criminal litigation resulted in such delay. Rather, the court believes that Joseph, facing ill health and a possible jail sentence, and having recently remarried, wanted to insure, prior to his incarceration, that his property be used only to support Mary and his new wife, and not the plaintiff.
That Joseph posted funds to cover outstanding judgments prior to the transfer does not alter the court’s opinion. Joseph’s refusal to comply with his support obligation had been a continuing one. The court believes that, notwithstanding the posting of the funds by which Joseph *387 procured a stay pending appeal, he knew full well at the time of the conveyance that further arrears would accrue to plaintiff.
As the court finds the April 16,1979 conveyance to have been fraudulent, such conveyance must be and is hereby declared null and void.