**ELGIN SWEEPER COMPANY, Plaintiff,**

v.

**MELSON INCORPORATED, Royal Bank of Canada, Carol Simpson, Dorothy Simpson and Scott Simpson, Defendants.**

**Civ. No. 93–CV–660.**

United States District Court,
N.D. New York.

May 5, 1995.

Poushter, Marshall & Leberman, P.C., Syracuse, NY, for plaintiff (William J. Leberman, of counsel).

Bond, Schoeneck & King, L.L.P., Syracuse, NY, for defendants Melson Inc., Carol Simpson, and Dorothy Simpson (S. Paul Battaglia, of counsel).

Phillips, Lytle, Hitchcock, Blaine & Huber, Rochester, NY, for defendant Royal Bank of Canada (Mark J. Moretti, of counsel).

Office of George M. Raus, Jr., Syracuse, NY, for defendant Scott Simpson (George M. Raus, Jr., of counsel).

## DECISION AND ORDER

SCULLIN, District Judge.

## INTRODUCTION

This case involves a number of claims of intentional and constructive fraud under the New York Debtor & Creditor law, as well as claims of breach of contract and fiduciary duty, arising out of a bank loan and a series of intercompany transfers and defaulted obligations. Plaintiff initiated this action alleging that a subsidiary of the defendant Melson Incorporated entered into a transaction without fair consideration, rendering the subsidiary insolvent and intentionally defrauding the plaintiff. This matter is before the court on defendants' motions for summary judgment.

Defendant Royal Bank of Canada ("Royal Bank" or "the Bank") moves for summary judgment on various grounds, arguing that Canadian law applies, and, further, that the plaintiff is required to obtain an order from the Ontario Court of Justice giving it permission to proceed with this action against the Bank. For the reasons hereinafter stated, the court addresses this motion as one brought pursuant to Rule 12, Fed.R.Civ.P., and denies it. The court does find, however, that the rule of comity requires that the plaintiff secure permission from the Ontario Court of Justice prior to proceeding against defendant Royal Bank.

Defendants Carol Simpson, Dorothy Simpson and Scott Simpson move for summary judgment as to their alleged alter ego liability. The court finds that there are genuine issues of material fact which preclude summary judgment on those claims.

In addition, the defendants Carol Simpson, Dorothy Simpson and Scott Simpson have moved to dismiss the complaint for failure to plead fraud with the requisite particularity, and defendants Royal Bank, Carol Simpson, Dorothy Simpson and Scott Simpson have moved to dismiss the complaint for failure to join necessary parties. The court finds these motions to be without merit.

Finally, the plaintiff has moved for a continuance pursuant to Rule 56(f), Fed.R.Civ.P. The plaintiff's motion is denied as moot.

## BACKGROUND

The facts in this action are complicated by the relationships among the defendants (see Fig. 1). Defendant Melson Incorporated ("Melson") was a holding company[1] that operated through two wholly owned subsidiaries: Compro, Limited ("Compro") and Frink America, Inc. ("Frink America").

Compro itself operated through two divisions: Frink Canada and Hamilton Gear. Frink Canada and Frink America manufac-

1. Defendants Carol Simpson, Dorothy Simpson and Scott Simpson were all shareholders, directors and/or officers of Melson.

tured and distributed similar lines of snow and ice control equipment, but did so separately: Frink Canada in Cambridge, Ontario, and Frink America in Clayton, New York.

Frink America also acted as a distributor of products manufactured by Frink Canada, and was heavily indebted to Frink Canada in 1990 and 1991.

Fig. 1

In 1990, Scott Simpson was Executive Vice President of Melson (the holding company), President of Compro (one of the Melson subsidiaries), and an officer of Frink America (the other Melson subsidiary). He was also an officer of Frink Canada (one of the Compro divisions). Along with Dinyar Pavri (Vice President, Treasurer and Chief Financial Officer of both Melson and Compro) and William Edwards (Vice President of Compro, President of Frink America, and President of Frink Canada),[2] Scott Simpson prepared a reorganization plan dubbed "Operation Windrow," with the goal of combining the manufacturing for both Frink Canada and Frink America in one location. Production was to be moved temporarily to Frink Canada's Ontario plant, until a modern production facility could be built in the United States. Elgin App.,[3] Ex. 2A.

One impediment to the plan was that Frink America was indebted to Key Bank of

Central New York ("Key Bank") for approximately $2.8 million US. To solve this problem, Compro applied for a loan from Royal Bank, a Canadian bank that also has branch offices in New York state. (Compro had other outstanding loans and lines of credit from Royal Bank totalling approximately $6 million Cdn.) Security for the loan included all of Compro's assets, as well as a second mortgage on Frink America's property located in Clayton, New York. Carol Simpson Aff., Ex. 11.

A loan of "$4,500,000 Cdn. equiv. of U.S. $3,750,000" was approved to "[f]acilitate the consolidation of Frink America operations with Frink Canada."[4] An advance was wired from Royal Bank "through the Compro and Frink America accounts" to Key Bank to satisfy Frink America's debt.[5] The funds were used to pay off Frink America's debt to Key Bank, and in August 1991 Frink Amer-

2. Melson and its subsidiaries shared several other directors and officers as well. Carol Simpson Aff. at 3–4.

3. Appendix of Exhibits Submitted by Plaintiff Elgin Sweeper Company in Opposition to the Separate Summary Judgment Motions of Defendants Royal Bank of Canada, Carol Simpson and Dorothy Simpson.

4. Letter from Royal Bank of Canada to D. Pavri, Vice–President, Finance & Secretary–Treasurer of Compro Limited (confirming various "Credit Facilities") of 8/12/91 at 3 (Carol Simpson Aff., Ex. 11; Robert Doyle Aff., Ex. C).

5. Dep. Tr. of Robert Doyle (from Frink America's bankruptcy proceeding), Elgin App., Ex. 7.

A complicated "revolving loan" arrangement was set up between the two companies' accounts at Royal Bank, apparently for repayment purposes. Under this arrangement, if Frink America's Royal Bank account was overdrawn, funds were transferred into it from Compro's Royal Bank account. Additionally, if Frink America's account at Key Bank became overdrawn, Royal Bank would wire funds the same day to cover the overdraft. If there was a surplus in Frink America's Royal Bank account, Compro would be notified by the Bank, and Compro would then advise the Bank as to how much it should transfer from Frink America's account to Compro's. These transactions occurred on a daily basis. Elgin App., Exs. 1C, 1D.

ica's production was transferred to Frink Canada's Ontario facility.

Plaintiff Elgin Sweeper Company ("Elgin"), a manufacturer of street sweeping equipment, had maintained a distributorship agreement with Frink Canada for many years. When the agreement was renewed on August 6, 1991, Elgin was not aware of the loan or the plan to combine the production facilities of Frink America and Frink Canada.[6]

Between September and November 1991, Elgin shipped fourteen street sweeping vehicles and parts to Frink Canada to fill orders from cities in the Province of Quebec. Invoice amounts totalled $1,095,266.[7] A check, drawn on Frink Canada's account at Royal Bank, was issued to Elgin on May 15, 1992, in the amount of $92,825.00 US, but payment was stopped on June 2, 1992. Compl.Ex. 3. Frink Canada's debt to Elgin remains unpaid.

On June 30, 1992, Compro filed for protection under the Canadian Companies Creditors Arrangement Act (CCAA).[8] The company continued to deteriorate, and was abandoned by defendant Carol Simpson and most of the other directors. Elgin App., Ex. 6, 11B, 11F. Royal Bank petitioned the Ontario Court of Justice for a final bankruptcy judgment, which was granted on October 30, 1992. Frink America was listed in Compro's bankruptcy as owing Compro's Frink Canada division a debt of $450,583.83. Elgin App., Ex. 12C.

A receiver was appointed over Compro's assets, and in November of 1992, the assets were sold for $9 million Cdn. Royal Bank, a secured creditor, received all of the proceeds of the sale. Elgin, an unsecured creditor, received nothing. The plaintiff requested Compro's bankruptcy trustee to pursue the claim that the $2.8 million loan advance was fraudulent, and that Royal Bank's security interest was therefore invalid. The trustee refused.

The plaintiff claims that Royal Bank's security was based upon a fraudulent conveyance, and the distribution of Compro's assets to Royal Bank should therefore be set aside. The plaintiff also claims that Melson and the Simpsons used Compro fraudulently for their own gain and are therefore liable for damages in the amount of Frink Canada's debt to the plaintiff.

Finally, in February 1993, Carol Simpson and Dorothy Simpson sold their Melson stock to David K. Lowry and Frink Environmental, Inc.[9] Royal Bank is currently one of the three principal shareholders of Frink Environmental, Inc. Elgin App., Ex. 14F.

## DISCUSSION

As stated, defendant Royal Bank moves for summary judgment on several different

---

**6.** The complaint alleges that, at the time Elgin renewed its distributorship agreement with Frink Canada,

[t]he defendants, acting through Compro, concealed from Elgin: (i) the virtually contemporaneous occurrence of the $2,8 million (U.S.) Advance, (ii) the fact that Compro was in the process of extending its pledge of all of its assets to the Royal Bank to cover advances it was not receiving, (iii) that Compro was specifically increasing its secured bank liabilities by approximately $2.8 million (U.S.) in return for a corresponding unsecured and uncollectible receivable from Frink [America], (iv) that Frink [America]'s financial condition was deteriorating and it could not have borrowed the $2.8 million (U.S.) on its own and it could not repay any of its debts to Compro, and (v) the fact that the defendants had caused Compro to trade substantially all of its equity for uncollectible debt from Frink [America].

Compl. ¶ 22. None of the defendants address this alleged "concealment" of information.

**7.** This is the amount Elgin alleges in the complaint. However, copies of invoices attached to plaintiff's complaint only add up to $246,822.48. Compl.Ex. 2. Compro's list of unsecured creditors in its Canadian bankruptcy proceeding shows a debt to Elgin of $992,058.11. In its Proof of Claim in that proceeding, Elgin claims a debt of $996,822.48 US. Elgin App., Ex. 12C.

**8.** Frink America filed a petition for bankruptcy under Chapter 11 in the United States District Court for the Northern District of New York on June 22, 1992, eight days before Compro filed for protection in Canada.

**9.** Both women had served as officers and/or directors of Melson. Carol Simpson was a director of Melson and Frink America in 1991, and assistant secretary of both companies in 1990 and 1991. Dorothy Simpson was vice-president of Melson in 1990 and 1991. Carol Simpson Aff. at 3–4.

theories, each of which will be addressed by the court in turn, and also seeks to have the complaint dismissed because the plaintiff has not obtained an order from the Ontario Court of Justice giving it permission to proceed with this action.

Following the discussion of Royal Bank's motions, the court will address the identical motions of defendants Carol Simpson, Dorothy Simpson and Scott Simpson. These defendants also seek summary judgment, or in the alternative, dismissal of the complaint for failure to plead fraud with the requisite particularity.

Finally, the court will address the motions of defendants Royal Bank, Carol Simpson, Dorothy Simpson and Scott Simpson to dismiss the complaint for failure to join necessary parties, and the plaintiff's motion for a continuance.

## I. ROYAL BANK'S "SUMMARY JUDGMENT" MOTION

Although the Notice of Motion filed by defendant Royal Bank (Docket # 15) describes its motion as one for summary judgment, pursuant to Fed.R.Civ.P. 56, it is clear from its memoranda of law that the Bank intends this motion as a motion to dismiss pursuant to Fed.R.Civ.P. 12. The court will therefore treat it as such.[10]

### A. *Defendant Royal Bank's Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted*

■ The first basis the Bank sets forth in its Memorandum of Law in support of its motion, is that Canadian law should be applied to this action, and therefore the complaint, which alleges violations of New York law, should be dismissed for failure to state a cause of action. Royal Bank Mem. of Law at 5–12 (Docket # 16). A motion to dismiss the complaint on this ground is normally made under Fed.R.Civ.P. 12(b)(6).

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). "Upon such a motion, all factual allegations in the complaint must be taken as true and construed favorably to the plaintiff." *LaBounty v. Adler,* 933 F.2d 121 (2d Cir.1991) (citations omitted). Taking the complaint's allegations as true in this action and construing them in favor of the plaintiff, the court cannot say that the plaintiff can prove no set of facts that would entitle it to relief. Further, the Bank cites no authority for dismissing a complaint based upon the application of foreign law, nor can the court find any such authority.

### B. *Forum Non Conveniens*

■ The second argument put forth by the Bank is that "the court should decline to exercise subject matter jurisdiction over this action". Royal Bank Mem. of Law at 14. This argument is also founded on the Bank's contention that Ontario provincial law is the proper law to apply to this action. In an action based on diversity of citizenship, however, an allegation of lack of subject matter jurisdiction (usually considered in the context of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1)) implicates either the diversity of the citizenship of the parties or the jurisdictional amount in controversy. *See* 5A C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1350. Application of controlling foreign law would not divest this court of subject matter jurisdiction.

■ The arguments made by Royal Bank more properly fit a motion to dismiss for improper venue pursuant to Rule 12(b)(3), or in this case, because the alternative forum is a foreign country, a motion to dismiss under the doctrine of forum non conveniens. *See* C.A. Wright & A.R. Miller, Federal Practice and Procedure §§ 1352, 3828 (hereafter "Wright & Miller"). Although a determination of what substantive law governs the case is the first step in any forum non conveniens analysis, *In re McClelland Engineers, Inc.,* 742 F.2d 837, 838 (5th Cir.1984), *cert. denied,* 469 U.S. 1228, 105 S.Ct. 1228, 84 L.Ed.2d 366 (1985), application of a foreign country's law

---

**10.** The affidavit attached to the Bank's Notice of Motion characterizes the motion as "Royal's Motion for Summary Judgment, dismissing the Complaint".

by itself would not constitute grounds for dismissal under this doctrine. Forum non conveniens implicates many factors other than application of foreign law, including factors relating to the public interest and practical problems that affect the ease, expense and efficiency of trying a case or enforcing a judgment if one is obtained. *See Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 508–509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) (the list of relevant factors set forth in *Gilbert* was endorsed by the Supreme Court in *Piper Aircraft v. Reyno*, 454 U.S. 235, 241 n. 6, 102 S.Ct. 252, 258 n. 6, 70 L.Ed.2d 419 (1981)).

■ The burden on a defendant moving to dismiss in favor of a foreign court is a heavy one, dismissal being the exception rather than the rule. Wright & Miller § 3828; *see, e.g., Schertenleib v. Traum*, 589 F.2d 1156, 1160 (2d Cir.1978). Royal Bank has not met this burden, addressing no factors other than its contention that Canadian law should apply. Defendant Royal Bank's motion to dismiss under the theory of forum non conveniens is denied.

Notwithstanding this decision with respect to defendant Royal Bank's motion, the court will, for the parties' edification and guidance, analyze the "choice of law" to be applied in the instant case.

### *Choice of Law*

■ In determining whether American law or foreign law governs any of the plaintiff's claims, a federal court in a diversity case must apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). This court, therefore, applies the choice-of-law rules as developed in New York case law.

■ "The first step in any case presenting a potential choice of law issue is to determine

whether there is an actual conflict between the laws of the jurisdictions involved." *Matter of Allstate Ins. Co.*, 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 905, 613 N.E.2d 936, 937 (1993). A federal court sitting in diversity is not required to determine which forum's law applies where the relevant issue would turn out the same under both forums' law and no true conflict exists. *Howard v. Clifton Hydraulic Press Co.*, 830 F.Supp. 708, 712 (E.D.N.Y.1993). In other words, where there is no material difference between the law of New York and the law of another potential forum, reference to New York law is proper. *Seven–Up Bottling Co. (Bangkok) v. Pepsico, Inc.*, 686 F.Supp. 1015, 1022 (S.D.N.Y.1988); *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 53 (2d Cir.1984).[11]

■ The relevant issue framed by the parties' motion papers involves proof of intent in a fraudulent conveyance cause of action. Resolution of this issue would likely turn out the same under the Fraudulent Conveyances Law of Ontario as it would under New York's Debtor & Creditor Law.

### New York Law

Article 10 of New York's Debtor and Creditor Law (§§ 270–281) provides causes of action for fraudulent conveyances. A conveyance is fraudulent when it is made without fair consideration and renders the transferor insolvent (§ 273), leaves the transferor with unreasonably small capital (§ 274), or when the transferor believes it will be unable to pay its debts (§ 275). Section 276 further provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

---

**11.** Royal Bank argues that *Seven–Up* and *Heller* are limited to actions in which the parties agree or acquiesce to the application of forum law. Because the parties in this action disagree as to the law to be applied, Royal Bank suggests that the court should not apply New York law. While it is true that the parties in *Seven–Up* and *Heller* did either agree or acquiesce to the application

of the law of the forum state, the basis of the courts' decisions was the lack of material differences between the laws in question, not the agreement or acquiescence of the parties. This court rejects the notion that defendants may obstruct the application of New York law simply by disagreeing that it is equivalent to the law of the alternative jurisdiction.

The parties are in agreement that, under New York law, a plaintiff can recover for fraudulent conveyance without directly proving intent, by establishing "constructive fraud". Constructive fraud can be proven merely by showing that a transfer was made without fair consideration, and it "constitutes a fraudulent conveyance, regardless of the intent of the transferor." *HBE Leasing Corporation v. Frank*, 48 F.3d 623, 633 (2d Cir.1995). "Constructive knowledge of fraudulent schemes will be attributed to transferees who were aware of circumstances that should have led them to inquire further into the circumstances of the transaction, but who failed to make such inquiry." *HBE Leasing*, at 636.

Even in "intentional fraud," intent does not have to be shown by direct evidence, and rarely is. It is normally inferred from circumstances surrounding the transfer. *ACLI Gov't Sec., Inc. v. Rhoades*, 653 F.Supp. 1388, 1394 (S.D.N.Y.1987), *aff'd*, 842 F.2d 1287; *Farino v. Farino*, 113 Misc.2d 374, 449 N.Y.S.2d 379, 386 (Sup.Ct.Nassau Co.1982). Factors considered include close relationships among parties to a transaction, secrecy and haste in making the transfer, inadequacy of consideration, and the transferor's knowledge of creditors' claims and his own inability to pay them. *ACLI Gov't Sec.*, 653 F.Supp. at 1394. Only an actual intent to *hinder and delay* need be established, not an actual intent to *defraud*, and lack of fair consideration gives rise to a rebuttable presumption of fraudulent intent. *Atlanta Shipping Corp., Inc. v. Chemical Bank*, 631 F.Supp. 335, 346–47 (S.D.N.Y.1986) ("A fraudulent intent will not be presumed, unless fair consideration is lacking.").

### Ontario Law

Section 2 of Ontario's Fraudulent Conveyances Act provides:

(2) Every conveyance of real property or personal property and every bond, suit, judgment and execution ... made with intent to defeat, hinder, delay or defraud creditors or others of their just and lawful actions, suits, debts, accounts, damages, penalties or forfeitures are void as against such persons and their assigns.

R.S.O.1980; c. 176, s. 2. To set aside a transfer as a fraudulent conveyance under Ontario law, a plaintiff must prove that the conveyance was made without valuable or "good" consideration, that the transferor intended to delay or defeat his creditors, and that the conveyance had the effect of delaying or defeating the creditors. *Murray E. Hogarth and George N. Wallace v. William J. Roe*, No. 21209/87, 1994 Ont.C.J. LEXIS 2582, at *22 (Ont.Ct. of Just. (Gen.Div.), June 15, 1994) ("*Hogarth*") (citing *Bank of Montreal v. Crowell*, 109 D.L.R.3d 442 (N.S.S.C., 1980)). The knowledge or intent of the transferee is irrelevant where consideration is demonstrated to be lacking or inadequate. "[T]he intent to defeat, hinder, delay or defraud of the transferor alone is sufficient to bring the conveyance within section 2 of The Fraudulent Conveyances Act." *Hogarth* at *23 (citing *Courtesy Chevrolet Oldsmobile Ltd. v. Dhaliwal* (1987), 62 O.R. (2d) 716 (H.C.J.) at 718).

As is true under New York law, intent need not be shown by direct evidence. "The intent of a transferor to defeat, hinder, delay or defeat creditors is a question of fact. The court must look at all the circumstances surrounding the conveyance, and is entitled to draw reasonable inferences from the proven facts to ascertain the intention of the transferor in making the conveyance." *Hogarth* at *24 (citing *Bank of Montreal v. Crowell et al., supra*, at 451). When a particular conveyance has the effect of defeating, hindering or delaying creditors, that effect is "to be considered as evidencing an intention to do so. In such a case it would be the duty of the judge to direct the jury that they must infer the intent of the settlor to have been to defeat or delay his creditors." *The Toronto–Dominion Bank v. Michael V. Miller*, No. 31–230926, 1990 Ont.C.J. LEXIS 541, at *5 (Ont.Ct. of Just. (Gen.Div.) In Bankr., Dec. 18, 1990) (citation omitted). This presumption may be rebutted by "cogent and affirmative evidence establishing an honest purpose in the making of the transfer, a purpose in no way designed to prejudice creditors[.]" *Id.* at *6 (citation omitted).

The court can find no material difference in the application of the law of

Ontario vis-à-vis the law of New York with respect to the claims alleged against the defendant Royal Bank. The court will therefore apply New York law as the "choice of law" in the instant case.[12]

### C. Defendant Royal Bank's Motion to Dismiss Due to Plaintiff's Failure to Obtain Permission to Proceed

■ In its Reply Memorandum of Law (Docket # 41), defendant Royal Bank further urges the court to dismiss the complaint because the plaintiff has not obtained permission to proceed with this action from the Ontario court that adjudicated Compro's bankruptcy pursuant to § 38 of Canada's Bankruptcy and Insolvency Act ("BIA"), R.S.C. 1985, c. B–3 (referred to hereafter as a "§ 38 order"). Section 38(1) provides:

> Where a creditor requests the trustee to take any proceeding that in his opinion would be for the benefit of the estate of a bankrupt and the trustee refuses or neglects to take the proceeding, the creditor may obtain from the court an order authorizing him to take the proceeding in his own name and at his own expense and risk, on notice being given the other creditors of the contemplated proceeding, and on such other terms and conditions as the court may direct.

"The BIA provides the mechanism for ... a creditor, under s. 38, to pursue a claim which the trustee elects not to pursue, in order to recover the amount of his debt, as long as he is prepared to fund the process." *In the*

*Matter of the Bankruptcy of Jolub Constr. Ltd.,* No. 31–224966, 1993 Ont.C.J. LEXIS 1745, at *12 (Ont.Ct. of Just. (Gen.Div.) In Bankr., Oct. 12, 1993).

Royal Bank again raises the specter of a lack of subject matter jurisdiction by arguing that Elgin's failure to get a § 38 order from the Ontario court deprives this court of subject matter jurisdiction. However, as the plaintiff correctly points out, a U.S. court's decision not to proceed with an action involving a foreign bankruptcy debtor is generally based upon principles of international comity, not subject matter jurisdiction. Mem. of Elgin Sweeper Company in Opp'n to Royal Bank of Canada's Mot. for Summ.J. at 20. *See* 19 N.Y.Jur.2d Conflict of Laws § 10 (1982).

■ Comity has been defined by the U.S. Supreme Court as "the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation[.]" *Hilton v. Guyot,* 159 U.S. 113, 164, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895). Generally, principles of comity are applied to enforce foreign judgments in the U.S. and to recognize foreign court proceedings. In particular cases, however, principles of comity are applicable to the laws of a foreign state. *International Tin Council v. Amalgamet,* 138 Misc.2d 383, 524 N.Y.S.2d 971 (N.Y.Sup. Ct., N.Y.Co.1988) (discussing whether court should recognize law of U.K. which grants immunity to U.K. resident from contract claim).

---

**12.** New York law would also apply based on choice-of-law principles. The choice-of-law principles the court uses to determine which jurisdiction's law to apply depend upon the nature of the issue to be determined. *RCA Corp. v. Tucker,* 696 F.Supp. 845, 853 (E.D.N.Y.1988). The issue framed by the parties in this action is whether certain conveyances were fraudulent as to a third party creditor of Compro. It is thus an issue of tort law and should be determined by choice-of-laws principles governing the selection of law in tort cases. *Id.* at 853–54.

In New York, the choice of law for tort causes of action is based upon the place which has the most significant contacts with the matter in dispute, thereby giving the place with the most interest in the problem paramount control over the legal issues arising in the case. *RCA Corp. v. Tucker,* 696 F.Supp. 845, 855 (E.D.N.Y.1988); *Babcock v. Jackson,* 12 N.Y.2d 473, 481, 240

N.Y.S.2d 743, 191 N.E.2d 279 (1963). The contacts which are significant in defining state interests are those that relate to the purpose of the particular law in conflict. *Miller v. Miller,* 22 N.Y.2d 12, 290 N.Y.S.2d 734, 237 N.E.2d 877 (1968). The purpose of New York's fraudulent conveyance law "is not to provide equal distribution of a debtor's estate among creditors, but to aid specific creditors who have been defrauded by the transfer of a debtor's property." *HBE Leasing Corporation,* at 634.

In the instant case, the defendant Royal Bank maintains offices in New York, two of the three named defendants are residents of New York, and a significant part of the allegedly fraudulent conveyances took place in New York. New York certainly has sufficient contacts relative to the above purpose to justify the application of New York law.

The issue being addressed here is not whether this court should recognize the Ontario court's distribution of Compro's assets under principles of international comity, but only whether it should recognize § 38 of the BIA.[13]

 Recognition or enforcement of foreign law, and the rights and liabilities based thereon, is determined in New York by comparing the foreign legislation to the state's public policy. If there is a conflict between the two, New York policy will prevail. *Ehrlich–Bober & Co. v. University of Houston*, 49 N.Y.2d 574, 427 N.Y.S.2d 604, 608, 404 N.E.2d 726, 730 (Ct.App.1980); *J. Zeevi & Sons v. Grindlays Bank (Uganda)*, 37 N.Y.2d 220, 371 N.Y.S.2d 892, 899, 333 N.E.2d 168, 173 (Ct.App.1975).

Neither party has indicated what if any state policy would be implicated by extending comity to § 38 of the BIA, nor has this court found any New York policy with which § 38 would conflict. This court will therefore extend comity to § 38 of the BIA and require the plaintiff to comply with its provisions. Since extending comity to Ontario law will not require this court to dismiss the complaint, the court will deny the defendant's motion to dismiss and allow the plaintiff 90 days from the date this decision is entered to obtain an order from the Ontario Court of Justice granting it leave to proceed with this action against the Royal Bank of Canada.[14]

**13.** Royal Bank claims that "the Ontario Bankruptcy Court's ruling is *res judicata* as to the issue at hand", namely whether Royal Bank's security for the loan was obtained via a fraudulent conveyance. Royal Bank Reply Mem. at 6 (Docket # 41). The court, however, has been provided with nothing indicating that this issue was ever considered by the Bankruptcy Court.

**14.** Though not relevant to the court's determination that the Bank's motion to dismiss should be denied, the court does note that Compro's trustee has expressed, through its attorney, its position that it is "prepared to consent to leave [to] proceed ... under section 38". Elgin App., Ex. 12–J. Furthermore, because Melson and the Simpsons were not parties to the original bankruptcy proceeding, and any relief obtained from those defendants would in no way implicate the Ontario bankruptcy judgment, a § 38 order does not appear to be required. The plaintiff's claims against those parties may proceed without such an order.

## II. MOTIONS OF CAROL SIMPSON, DOROTHY SIMPSON, AND SCOTT SIMPSON

The plaintiff attempts to hold Melson and the three Simpson defendants liable as alter egos of Compro and Frink Canada, not only for the allegedly fraudulent conveyance, but also for breach of contract and breach of a fiduciary duty to creditors.

### A. *Summary Judgment: Alter Ego Liability*

 Carol Simpson and Dorothy Simpson moved for summary judgment on the issue of their alleged alter ego liability, and Scott Simpson joined their motions. The thrust of each defendant's argument is that she or he was not in control of Melson or Compro at the time of the loan, and that the plaintiff cannot "pierce the corporate veil" and hold them individually liable as alter egos for Frink Canada's debt to the plaintiff.[15]

 Summary judgment is appropriate only when the moving party shows that no genuine issue of material fact exists as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). An unresolved factual issue is one that a reasonable fact-finder could decide in favor of either party. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

**15.** Defendant Carol Simpson further argues that the fraudulent conveyance claims should be dismissed against her because she is not a "transferee" within the meaning of the New York Debtor & Creditor Law. However, the alter ego doctrine "assumes that the corporation itself is liable for the obligation sought to be imposed. Thus, an attempt of a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligations on its owners." *Morris v. Department of Taxation and Finance*, 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 810, 623 N.E.2d 1157, 1160 (1993) (citations omitted). If the jury determines after trial that the defendant had the requisite control to apply the alter ego doctrine, it will be irrelevant whether she was a transferee.

■ Initially, some proof of fraud, whether actual or intended, must be offered before the court can pierce the corporate veil. *Warner Bros., Inc. v. Gay Toys, Inc.,* 598 F.Supp. 424, 430 (S.D.N.Y.1984). The plaintiff has satisfied this first step by submitting evidence that Compro was used to funnel loan proceeds to Frink America, thereby leaving Compro insolvent and committing a fraud on the plaintiff.

The next step the court must take to determine the appropriateness of piercing the corporate veil, and thus exposing the defendants to individual liability, is to analyze the following factors: ownership of stock, commonality of directors and officers, financial relationships between the entities, and independence of the subsidiary's directors or executives (whether they act in the interest of the subsidiary, or take their orders from the parent corporation in the interest of the parent). *See Conan Properties, Inc. v. Mattel, Inc.,* 619 F.Supp. 1167, 1170 (D.C.N.Y.1985).

■ The ownership structure and financial relationships of Melson and its subsidiar-ies support piercing the corporate veil in this action. The affidavits and exhibits submitted by the Simpsons and by the plaintiff reveal that material issues of fact exist regarding ownership of stock and control of the corporations.[16]

Minutes from Melson's Board meetings show that policy for all the corporations was dictated by the Melson directors, several of whom were also directors and officers of the subsidiary companies. Carol Simpson, Dorothy Simpson and Scott Simpson were all present at those meetings.

■ For all these reasons, summary judgment as to alter ego liability of Scott Simpson, Dorothy Simpson, and Carol Simpson is denied.[17]

## B. *Dismissal: Particularity Required in Pleading Fraud*

■ Defendants Carol Simpson and Dorothy Simpson, joined by Scott Simpson, moved to dismiss the complaint for failure to comply with Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that "[i]n all averments of fraud ... the circum-

16. There is presently ongoing state court litigation concerning stock ownership. During 1991, Melson's majority shareholder, Melvin Simpson of Fayetteville, New York, maintained nominal control of Melson as trustee of a family trust into which he had placed his stock. Carol Simpson maintains, however, that in 1989, suffering from prostate cancer, Melvin Simpson began to turn actual control of Melson over to his son, Scott Simpson, and that Scott assumed complete control in 1991. Elgin App., Ex. 15A.

In December 1991, Melvin Simpson died, and his stock passed to his wife Carol Simpson. Melvin Simpson's first wife, Dorothy Simpson, owned a slightly smaller portion of stock, held in a trust of which she was the trustee. Scott Simpson and his brothers (the sons of Melvin and Dorothy Simpson) also owned a small amount of Melson stock which was held in trust for them. Elgin App., Ex. 15A. Carol Simpson Aff. ¶¶ 8, 9. Scott Simpson, however, denies ever owning any Melson stock. Scott Simpson Answer ¶ 5.

Scott Simpson claims that, on May 15, 1992, he resigned from the director and officer positions he held in Melson and its subsidiaries. However, a transcript of the May 8, 1992, meeting of the Melson Board of Directors indicates that Scott Simpson did not resign, but was terminated at that meeting. Elgin App., Ex. 10E.

17. Defendant Carol Simpson also argues that the complaint should be dismissed because New York Debtor and Creditor Law does not provide

for relief in the form of a money judgment. Carol Simpson Mem. at 9–11. In support of its argument, the defendant cites *Federal Deposit Ins. Corp. v. Porco,* 75 N.Y.2d 840, 842, 552 N.Y.S.2d 910, 911, 552 N.E.2d 158, 159 (1990), which affirmed the dismissal of a complaint that alleged "mere participation in the transfer of a debtor's property" because New York Debtor and Creditor Law provides no cause of action for "merely assist[ing] a debtor in transferring assets". *Id.*

The plaintiff in the present action has alleged more that "mere participation" in a fraudulent transfer. Relying on the *Porco* decision, the Second Circuit found that "[t]he New York Court of Appeals has made it clear that the pertinent provisions of the New York Debtor and Creditor Law provide a creditor's remedy for money damages against parties who participate in the fraudulent transfer of a debtor's property and are ... beneficiaries of the conveyance." *Stochastic Decisions, Inc. v. DiDomenico,* 995 F.2d 1158, 1172 (2d Cir.1993). The plaintiff has alleged both that the defendant, a director and officer of Melson, participated in a fraudulent transfer, and also that she benefitted from the conveyance through her sale of Melson stock, which would not have been possible, or as profitable, had it not been for the fraudulent transfer. These are issues of fact which must be determined by the jury.

stances constituting fraud ... shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."[18] The purpose of this requirement is to give the defendants notice of the precise charges against them. *Cowen & Co. v. Merriam*, 745 F.Supp. 925 (S.D.N.Y.1990).

The court notes that less particularity is required where the plaintiff asserts that fraud was committed against a third party and the facts are exclusively within the adverse parties' knowledge. *Allegaert v. Perot*, 78 F.R.D. 427, 430 (S.D.N.Y.1978) (relying on *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir.1972)); *see also Federal Sav. & Loan Ins. v. Shearson–American Express*, 658 F.Supp. 1331, 1336–38 (D.P.R.1987). The complaint herein adequately complies with Rule 9(b) by describing the transactions between Royal Bank, Frink America and Compro, as well as defendants' alleged responsibility under an alter ego theory. Several factual allegations made "on information and belief" were borne out by subsequent discovery, and those remaining consist of allegations of fraudulent intent, which may be averred generally, and of control over the various corporations, a matter upon which the defendants themselves disagree.

Further, the complaint obviously satisfied the purpose of Rule 9(b) to put defendants on notice of the charges against them. Scott Simpson filed an answer, while the motion papers of Carol Simpson and Dorothy Simpson indicate they were well aware of the nature of the claims against them. Their motions to dismiss the complaint pursuant to Rule 9(b) are therefore denied.

### III. MOTIONS OF ROYAL BANK, CAROL SIMPSON, DOROTHY SIMPSON AND SCOTT SIMPSON TO DISMISS FOR FAILURE TO JOIN NECESSARY PARTIES

Defendants Carol Simpson and Dorothy Simpson, joined by Scott Simpson moved to dismiss the complaint for failure to join Key Bank as a necessary party pursuant to Fed.R.Civ.P. 19(b). Defendant Royal Bank moved to dismiss the complaint for failure to join Compro's bankruptcy trustee as a necessary party.

Rule 19(a) directs the joinder of parties if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a). Subsection (b) of Rule 19 directs the court to dismiss an action only in situations where such a person cannot be made a party. *See* Fed.R.Civ.P. 19(b) advisory committee's note.

The defendants fail to explain, nor can the court discern, how a judgment rendered in the absence of either Key Bank or the trustee would interfere with the accordance of complete relief among the current parties, or what interest is claimed by Key Bank or the trustee relative to this action. The court thus finds the defendants' motions to be without merit, and the motions are denied.

### IV. ELGIN'S MOTION FOR CONTINUANCE

In light of the preceding findings by the court, plaintiff's cross-motion for continuance pursuant to Fed.R.Civ.P. 56(f) is moot and therefore denied.

### CONCLUSION

Defendant Royal Bank's motion to dismiss the complaint for failure to state a claim

18. In relation to this argument, defendant Carol Simpson briefly argues that the plaintiff's request for punitive damages (posited only in relation to the plaintiff's breach of fiduciary duty claim) be dismissed because "[a]ssertions that punitive damages are warranted under New York law also triggers [sic] enhanced pleadings standards" which the defendant contends the plaintiff did not meet. Carol Simpson Mem. at 7. Except for this passing reference to punitive damages, none of the parties have addressed the issue of punitive damages relative to the motions addressed herein. Therefore, the court will not address the matter at this time.

upon which relief may be granted is denied. The court's subject matter jurisdiction would not be divested by application of foreign law, and the Bank's motion to dismiss under the theory of forum non conveniens is denied. The rule of comity, however, requires the plaintiff to secure permission from the Ontario Court of Justice to proceed against defendant Royal Bank.

Further, the court finds that there are genuine issues of material fact as to whether defendants Carol Simpson, Dorothy Simpson or Scott Simpson are liable for Frink Canada's debt to Elgin under an alter ego theory. Therefore, their motions for summary judgment are denied.

Finally, the court finds the defendants' motions to dismiss for failure to plead fraud with particularity and failure to join an indispensable party are without merit. These motions are therefore denied.

In accordance with the foregoing determinations, it is hereby

ORDERED, that plaintiff is afforded 90 days from the date this order is entered to obtain an order from the Ontario Court of Justice pursuant to Section 38 of Ontario's Bankruptcy and Insolvency Act allowing plaintiff to proceed in this action against the Royal Bank of Canada, and it is further

ORDERED, that the motions of Royal Bank of Canada, Carol Simpson, Dorothy Simpson and Scott Simpson for summary judgment and dismissal, and plaintiff's motion for continuance, are in all other respects DENIED.

**IT IS SO ORDERED.**